984 F.2d 1239
 299 U.S.App.D.C. 401
 UNITED STATES of America
v.
Pablo Juan MERLOS, a/k/a Pablo Escobar, Vale Berga, Appellant.
UNITED STATES of America
v.
Victor LORIANO, a/k/a Liriano-Alvedo Jose Morgan, Tony
Moreno, Manuel Soto, Shorty, Appellant.
 Nos. 91-3213, 91-3217.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 24, 1992.
Decided Feb. 12, 1993.
 
 Appeals from the United States District Court for the District of Columbia (CR-90-00518-02 & 90-00518-01).
 Leigh A. Kenney, Asst. Federal Public Defender, with whom A.J. Kramer, Federal Public Defender, Washington, DC, was on the brief, for appellant in No. 91-3213. Santha Sonenberg, Asst. Federal Public Defender, Washington, DC, entered an appearance for appellant in No. 91-3213.
 [299 U.S.App.D.C. 402] Barbara R. Miller, Washington, DC (appointed by the court), for appellant.
 James S. Arisman, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Thomas C. Black, Washington, DC, were on the brief, for appellee.
 Before EDWARDS, RUTH BADER GINSBURG and WILLIAMS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.
 STEPHEN F. WILLIAMS, Circuit Judge:
 
 
 1
 After separate trials, appellants Pablo Juan Merlos and Victor Loriano were each convicted on two counts of selling crack cocaine. Merlos sold 50 grams to two undercover District of Columbia police officers once in August 1990, and later that month sold five grams to one of the same undercover officers and an agent of the federal Drug Enforcement Agency. Loriano sold five grams to a DEA agent and a District of Columbia police officer in April 1990, and then 50 grams to the same DEA agent in May 1990. In each case, the arresting officers had contacted appellants through police informants.
 
 
 2
 At trial Merlos advanced a defense of entrapment, but the trial court, finding no evidence of entrapment, declined to instruct the jury on that defense. Merlos was convicted and sentenced to concurrent prison terms of 135 months, five years of supervised release, and a $100 special assessment. Loriano raised a mistaken identity defense, was convicted, and was sentenced to concurrent 180-month sentences. This sentence reflected a two-point increase in offense level because of the trial judge's finding that Loriano was a "manager" of narcotics activity within the meaning of U.S. Sentencing Guidelines § 3B1.1(c).
 
 
 3
 Appellants raise a variety of claims in this consolidated appeal, but only one requires consideration in an opinion. The trial judge's instructions to the jury equated certainty "beyond a reasonable doubt" with "strong belief", an equation we find erroneous. In light of overwhelming evidence of petitioners' guilt, however, we find the errors to be harmless and do not set aside the convictions.
 
 
 4
 * * * * * *
 
 
 5
 The judge's instructions on reasonable doubt were substantially identical in both cases. In the Merlos trial he said:
 
 
 6
 Every defendant in a criminal case is presumed to be innocent. As I told you on several occasions, the presumption of innocence remains with defendant ... throughout the trial unless and until he is proven guilty beyond a reasonable doubt.
 
 
 7
 The burden is on the government to prove the defendant guilty beyond a reasonable doubt. The law does not require the defendant to prove his innocence or to produce any evidence.
 
 
 8
 As I said, the government has the burden of proving the defendant guilty beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you with a strong belief in the defendant's guilt.
 
 
 9
 There are very few things in this world that we know with absolute certainty. In criminal cases, the law does not require proof that overcomes every possible doubt or proof that establishes guilt to a mathematical certainty.
 
 
 10
 The government's burden is to prove beyond a reasonable doubt the crimes charged were committed--and you are to consider each charge separately--and that the defendant is the person who committed the crimes.
 
 
 11
 A reasonable doubt is a doubt for which you can state a reason; it is not a doubt based on conjecture.
 
 
 12
 Merlos Tr., 5/15/91, at 55-56 (emphasis added).
 
 
 13
 In Loriano's case the court said exactly the same, but added the following as well:
 
 
 14
 If based on your consideration of the evidence, you have a strong belief that the defendant is guilty of the crimes charged, it is your duty to find him guilty.
 
 
 15
 On the other hand, if you have a reasonable doubt regarding the defendant's guilt, then you must find him not guilty.
 
 
 16
 [299 U.S.App.D.C. 403] Loriano Tr., 5/21/91, at 50-51 (emphasis added).
 
 
 17
 Loriano properly objected and requested use of the so-called "Redbook" instructions on reasonable doubt, Criminal Jury Instructions: District of Columbia (3rd ed. 1978), Instructions 2.08, 2.09. (Merlos did not object, but that does not affect the outcome; we would still have to review for plain error, and in fact we find the error harmless.) We include instruction 2.09--which is substantially similar to language that we characterized as "exemplary" in Moore v. United States, 345 F.2d 97, 98 (D.C.Cir.1965)--to make the distinction clear:
 
 
 18
 Reasonable doubt, as the name implies, is a doubt based on reason, a doubt for which you can give a reason. It is such a doubt as would cause a juror, after careful and candid and impartial consideration of all the evidence, to be so undecided that he cannot say that he has an abiding conviction of the defendant's guilt. It is such a doubt as would cause a reasonable person to hesitate or pause in the graver or more important transactions of life. However, it is not a fanciful doubt nor a whimsical doubt, nor a doubt based on conjecture. It is a doubt which is based on reason. The government is not required to establish guilt beyond all doubt, or to a mathematical certainty or a scientific certainty. Its burden is to establish guilt beyond a reasonable doubt.
 
 
 19
 Although the judge's charge here was in part drawn from No. 21 of the Federal Judicial Center's Pattern Criminal Jury Instructions (1987), those use the phrase "firmly convinced" where the judge here used "strong belief".
 
 
 20
 There is a risk in appellate courts' picking over every possible nuance of an instruction, as it is likely to drive district courts into a ritualistic recital of canned language that numbs the jury. Further, restating "reasonable doubt" is in effect an effort to "express what is nearly indefinable." McGill v. United States, 348 F.2d 791, 797 (D.C.Cir.1965). Nonetheless, the Supreme Court has been insistent on the "vital role" of the charge on reasonable doubt, especially its role in reducing the risk of convictions based on factual error. See Cage v. Louisiana, 498 U.S. 39, 40, 111 S.Ct. 328, 329, 112 L.Ed.2d 339 (1990). We too have been insistent that the charge not be weakened: "An instruction central to the determination of guilt or innocence may be fatally tainted by even a minor variation which tends to create ambiguity." United States v. Alston, 551 F.2d 315, 321 (D.C.Cir.1976). In reviewing the jury instruction, we inquire " 'whether there is a reasonable likelihood that the jury has applied the instruction in a way' that violates the constitution." Estelle v. McGuire, --- U.S. ----, ----, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991) (quoting Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 1197, 108 L.Ed.2d 316 (1990)).
 
 
 21
 "Belief", even "strong belief", appears appreciably broader than the Redbook's reference to "abiding conviction" or the Federal Judicial Center's "firmly convinced". Both conviction and convinced--even before the intensifying adjective or adverb--suggest a high level of confidence. One might say, "I believe John is at the movies" without much assurance; to raise the ante to "I'm convinced" would convey a real distinction to the listener. Dictionaries, which are simply empirical works asserting the authors' views of what a word may summon up in people's minds, confirm this distinction. Two popular ones offer rather sweeping definitions of belief that convey no sense of certainty. Webster's 3rd International Dictionary (unabridged) (1981), states that "[b]elief signifies mental acceptance of or assent to something offered as true, with or without certainty." The Oxford English Dictionary (2d ed. 1989) includes among its definitions of belief "[t]he mental action, condition or habit of trusting to or confiding in a person or thing; trust, dependence, reliance, confidence, faith." Perhaps even more suggestive of the possible reach of "belief" is the list of synonyms provided by Webster's II New Riverside Dictionary (1984), namely, "conviction, feeling, idea, notion, opinion, persuasion, position, sentiment, view." All but "conviction" seem very weak, and we [299 U.S.App.D.C. 404] doubt that adding "strong" before any of these terms could adequately offset their expansive implications.
 
 
 22
 Much of the challenged instruction, of course, is unobjectionable, and it is true that in reviewing a jury instruction we consider not just the challenged phrases, but the instruction as a whole. McGuire, --- U.S. at ----, 112 S.Ct. at 482; United States v. Whoie, 925 F.2d 1481, 1485 (D.C.Cir.1991). On the key issue of the necessary level of certainty, however, there is nothing to offset the too-spacious character of "strong belief". While some jurors might equate strong belief with having an abiding conviction or being firmly convinced, we think that it is "reasonably lik[ely]" that a jury would understand the phrase more broadly. Under McGuire and Boyde, that condemns the charge.
 
 
 23
 Review of a jury instruction is, however, a two-step process. Even an error of constitutional dimension does not require reversal if the court finds the error harmless beyond a reasonable doubt. See Yates v. Evatt, --- U.S. ----, ----, 111 S.Ct. 1884, 1892, 114 L.Ed.2d 432 (1991); United States v. Pinkney, 551 F.2d 1241, 1245 (D.C.Cir.1976) (citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). McGuire and Boyde, with their focus on whether the jury " 'applied the instruction in a way' that violates the Constitution", McGuire, --- U.S. at ----, 112 S.Ct. at 482 (emphasis added), might be read as collapsing the "error" and "harmless error" steps into one, but, taken as a whole, we think the decisions do not bear such a reading. First, the quoted passage appears in sections of the opinions that focus on the level of probability that an ambiguous instruction was misunderstood. See id., --- U.S. at ----, n. 4, 112 S.Ct. at 482 n. 4; Boyde, 494 U.S. at 378-80, 110 S.Ct. at 1196-97. In addition, neither case mentions anything about altering the settled two-step approach. Finally, in at least one decision since McGuire, the Court itself employed the two-step method of analyzing a jury instruction for harmless error. Sochor v. Florida, --- U.S. ----, ----, ---- - ----, 112 S.Ct. 2114, 2119, 2122-23, 119 L.Ed.2d 326 (1992). Accordingly, we read McGuire and Boyde as relating merely to the determination of error, leaving open the issue of harmlessness. Accord Stevens v. Zant, 968 F.2d 1076, 1086 n. 12 (11th Cir.1992) (holding that McGuire did not alter settled two-step harmless error inquiry for jury instructions); see also Rock v. Zimmerman, 959 F.2d 1237, 1246-47 & n. 3 (3d Cir.1992) (en banc) (applying two-step analysis and reading McGuire as governing only the risk of misinterpretation necessary to render the instruction "erroneous").
 
 
 24
 In deciding whether an error was harmless, we examine the entire record to determine whether the error meant the difference between acquittal and conviction. United States v. Martin, 475 F.2d 943, 949 (D.C.Cir.1973). Clearly, the stronger the evidence of guilt, the less likely that the error was prejudicial. Id. at 948. Here, the evidence of guilt was overwhelming.[1] According to the undercover agents Merlos negotiated the drug sales with them, directed them to the locations of the drug sales and then made the sales for which he was convicted. Tr. 5/13/91 at 50-54, 69-71; Tr. 5/14/91 at 3341. The government submitted a tape and transcript of the negotiations and other contacts for the second deal. Tr. 5/14/91 at 34-35, 42, 47-48. Merlos presented no evidence and offered no defense other than the properly rejected one of entrapment.
 
 
 25
 Similarly, one undercover officer gave detailed testimony of Loriano's participation in both of his two drug sales. Tr. 5/17/91 p.m. at 69, 74-75. A second undercover officer, though not present at the second transaction, gave corroborating testimony as to the first. Tr. 5/20/91 at 8-11, 18-19. In defense Loriano presented the testimony of his girlfriend, who said that she did not know he was a drug dealer and had never seen him with drugs, and that [299 U.S.App.D.C. 405] Loriano did not live lavishly. But she also said she did not know what Loriano did for a living and had never asked, that she refrained from asking "to protect [her] children", that she did not know that he maintained other addresses, and that she had never been present at the apartment where the first sale took place and from which Loriano in part negotiated the second. Tr. 5/20/91 at 111-12, 114-15, 117, 119. Although there were some errors in undercover agent Alvarez's description of Loriano in his written reports, his identification of Loriano in the first transaction was confirmed by the second undercover agent, see Tr. 5/20/91 at 10-11, and Alvarez was also the undercover agent in the second sale. In addition, Loriano's girlfriend said that with her Loriano went by the name "Shorty", Tr. 5/20/91 at 112, the same name used by the person from whom the undercover agents made their purchases. Tr. 5/20/91 at 23, Tr. 5/17/91 p.m. at 74. We are convinced beyond a reasonable doubt that the error in the jury instructions could not reasonably have made the difference between conviction and acquittal of either defendant.
 
 The judgment of the district court is
 
 26
 Affirmed.
 
 
 
 [1]
 The government recites the evidence against each defendant in its brief. Government Brief at 3-10. While all of the government's assertions are supported somewhere on the record in the two trials, its citations to the transcript in Loriano's trial are almost entirely incorrect