993 F.2d 913
 301 U.S.App.D.C. 251
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee
v.
Wilfredo DeLEON, Appellant
 Nos. 91-3297, 92-3328.
 United States Court of Appeals, District of Columbia Circuit.
 April 15, 1993.
Rehearing Denied Feb. 25, 1994.
 
 Before: EDWARDS, D.H. GINSBURG, and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 These appeals were considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties and arguments by counsel. After full review of the case, the court is satisfied that appropriate dispositions of the appeals do not warrant an opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the convictions be affirmed, and the cases be remanded for re-sentencing.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b)(2).
 
 MEMORANDUM
 
 4
 On August 5, 1991, Francisco Ynfante and Wilfredo DeLeon (collectively "Appellants") were found guilty of distribution of five or more grams of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(B)(iii) and 18 U.S.C. § 2. Appellants were subsequently sentenced to 168 months' imprisonment and four years supervised release. Upon consideration of the briefs and oral argument presented in this appeal, we conclude that the trial court did not commit harmful error leading to Appellants' convictions. However, we find that the District Court improperly applied the Federal Sentencing Guidelines in setting Appellants' base offense levels. Accordingly, we affirm the convictions but remand the case to the District Court for re-sentencing.
 
 I. BACKGROUND
 
 5
 Jose Cruz, a special employee of the Metropolitan Police Department, was instructed by Officer Dale Sutherland to arrange a purchase of two ounces of crack cocaine from Ynfante. Cruz contacted Ynfante, and agreed to pay $2,400 for the two ounces. Wired for sound, carrying pre-recorded bills, and under police surveillance, Cruz entered a pool hall on December 20, 1990, to meet Ynfante and make the transaction. Cruz approached Ynfante, who was accompanied by DeLeon, and asked him if he was "ready." Ynfante then spoke to DeLeon out of Cruz's range of hearing, and DeLeon walked toward an apartment building at 3300 16th Street, Northwest. Ynfante and Cruz got into Cruz's car, and Ynfante told Cruz that DeLeon was retrieving the cocaine.
 
 
 6
 At 3300 17th Street, DeLeon approached Cruz's car, leaned in the passenger window, and handed Ynfante four plastic bags of cocaine. Cruz signaled the arrest team, and the police recovered 27.03 grams of cocaine base from the driver's seat where Cruz had been sitting and the pre-recorded bills from Ynfante in the passenger seat. Both Ynfante and DeLeon were arrested.
 
 
 7
 Cruz's testimony was corroborated by the nine police officers conducting surveillance. Four officers testified to seeing DeLeon make a passing motion into the car, but Cruz was the only witness who saw that DeLeon actually passed cocaine. The tape from Cruz's sound wire was also admitted into evidence.
 
 
 8
 Prior to trial, Government counsel advised the District Court that the prosecution intended to introduce evidence of Appellants' involvement in drug transactions prior to the date of arrest in this case. The District Court found that evidence of prior drug transactions would be admissible to show knowledge, intent and the dynamics of Appellants' relationship in a two-man drug operation. Goverment counsel also mentioned alleged threats made to prosecution witness Blanca Montanez that may have played a significant role in her decision to not cooperate. Counsel indicated that the Government had no intention of using the evidence relating to threats in its case-in-chief, but reserved the right to address the issue should defense counsel first elicit testimony of that nature.
 
 
 9
 At trial, pursuant to an evolving theory that Appellants were "set-up" by Cruz, counsel for both DeLeon and Ynfante asked Officer Sutherland, during cross-examination, about whether he was initially motivated to arrest Appellants based on alleged threats they made to Blanca Montanez. The Government then elicited testimony from Cruz regarding threats to Montanez, and counsel for Ynfante cross-examined him on this same point. Finally, the Government raised the issue of threats on direct examination of Blanca Montanez to explain why she had changed her mind about cooperating with the Government.
 
 
 10
 At sentencing, the District Court included, in addition to the 27.03 grams of cocaine found in Cruz's car, 100 grams of cocaine found in Santos Calderon's apartment, as "relevant conduct" for base offense level purposes. The 100 grams were recovered pursuant to Ynfante's statement that DeLeon had purchased the cocaine found in Cruz's car from Calderon's apartment, which is located at 3300 16th Street. DeLeon and Ynfante were sentenced on November 8, 1991, and December 17, 1991, respectively, to 168 months' incarceration followed by four years of supervised release.
 
 II. ANALYSIS
 A. Sentencing
 
 11
 Appellants argue that the trial court improperly included the 100 grams of cocaine found in Calderon's apartment to determine their base offense levels. The Government concedes that the trial court improperly included the 100 grams as "relevant conduct" pursuant to § 1B1.3. See U.S.S.G. § 1B1.3 (1992). Nonetheless, the Government argues that this court should affirm the sentences on a second theory that was not raised or considered at sentencing.
 
 
 12
 The new theory offered by the Government is that the sentences should be affirmed because Appellants originally had negotiated to sell 2 ounces of cocaine, which, if properly included as relevant conduct pursuant to § 1B1.3, would have resulted in the same base offense level that Appellants ultimately received. We offer no judgment on the legal viability of the Government's new theory, or on the accuracy of the facts asserted to support the theory. The sentencing court made no factual findings or legal rulings regarding whether Appellants' actions in negotiating the drug sale constituted relevant conduct, and this court will not make those initial determinations on appeal. See, e.g., United States v. Barry, 938 F.2d 1327, 1337 (D.C.Cir.1991) (court "decline[d] to speculate about whether there [was] evidence in the record from which the district court could conclude that [defendant] obstructed the administration of justice within the meaning of [Federal Sentencing Guideline] § 3C1.1."). Accordingly, we remand the case for re-sentencing so the District Court can determine whether such a theory is sustainable in law and in fact.
 
 B. "Other Crimes" Evidence
 
 13
 Appellants argue that the trial court erred in admitting the testimony relating to their involvement in prior drug transactions and the threats made to Government witness Blanca Montanez. We find that the evidence was admissible pursuant to Rule 404(b) of the Federal Rules of Evidence. See FED.R.EVID. 404(b).
 
 
 14
 To determine the admissibility of the testimony regarding the prior drug transactions and the alleged threats pursuant to Rule 404(b), the court must perform the "two-step analysis ... firmly rooted in the law of this circuit." United States v. Miller, 895 F.2d 1431, 1435 (D.C.Cir.), cert. denied, 498 U.S. 825 (1990). The court must determine (1) whether the evidence was offered for some purpose other than character; and (2) whether the evidence was more probative than prejudicial. Id. The balance performed by the District Court in part two of the test should be reviewed only for "grave abuse." United States v. Manner, 887 F.2d 317, 322 (D.C.Cir.1989), cert. denied, 493 U.S. 1062 (1990).
 
 
 15
 First, Appellants opened the door to the use of testimony relating to prior drug transactions by pursuing a theory that they were set-up by Cruz, and that they had nothing to do with the drugs in Cruz's car. The evidence of the prior drug transactions was highly probative of Ynfante's and DeLeon's knowledge and intent to distribute the cocaine, and to do so pursuant to a two-man scheme. See United States v. Washington, 969 F.2d 1073, 1081 (D.C.Cir.1992), cert. denied, No. 92-6032, 1992 WL 266075 (1993). Second, Appellants opened the door to the use of the testimony relating to threats to Blanca Montanez by raising the issue of threats in their cross-examinations of Sutherland and Cruz. Whatever prejudice may have accompanied the testimony about threats had already penetrated the jury box through Appellants' own initiative.
 
 
 16
 C. Severance of Ynfante's Case from DeLeon's
 
 
 17
 Ynfante contends that the District Court improperly refused to sever his case from DeLeon's. Ynfante argues that the "other crimes" evidence was relevant to DeLeon's case, but prejudicial and irrelevant to his. Rule 14 of the Federal Rules of Criminal Procedure provides that a trial court may sever cases if a defendant is prejudiced by joinder. FED.R.CRIM.P. 14. This Circuit interprets the permissive language of Rule 14 to allow trial courts "wide discretion in determining whether to sever the trials of defendants who have properly been joined." United States v. Ford, 870 F.2d 729, 730 (D.C.Cir.1989).
 
 
 18
 Here, the evidence of prior drug transactions was relevant to counter Ynfante's defense that he was set-up. Evidence of the prior acts was probative of whether Ynfante had the requisite knowledge and intent to make the drug transaction at issue. Regarding the evidence of threats to Montanez, Ynfante's counsel raised the issue in the cross-examinations of both Sutherland and Cruz, so the Government's use of that evidence introduced no additional prejudice to Ynfante's trial. In sum, we find no basis for overturning the District Court's denial of severance.
 
 
 19
 D. The Scope of Cross-Examination.
 
 
 20
 Ynfante argues that the trial court committed reversible error by limiting his Sixth Amendment right to cross-examine Jose Cruz, the government informant, on his background in the El Salvadoran Army. Generally, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986) (internal quotations and citation omitted). Nonetheless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about ... interrogation that is repetitive or only marginally relevant." Id. at 679.
 
 
 21
 Ynfante asserts that information relating to Cruz's background in the El Salvadoran army might be probative of his credibility as a witness. We find that the trial court judge acted well within his "wide latitude" by determining that Cruz's background in the military had no relevance to his credibility as a witness. Therefore, reversible error was not committed by limiting Ynfante's cross-examination of Cruz.
 
 E. Jury Instructions
 
 22
 DeLeon and Ynfante contest the District Court's instructions to the jury regarding the definition of proof beyond a reasonable doubt. During the instructions, the District Court judge explained that finding guilt "beyond a reasonable doubt" was equivalent to having a "strong belief" in a defendant's guilt. These identical instructions were challenged in United States v. Merlos, 984 F.2d 1239 (D.C.Cir.1993). In Merlos, this court found that equating proof "beyond a reasonable doubt" with a "strong belief" in the defendant's guilt constituted error. Id. at 1241.
 
 
 23
 Nonetheless, the court in Merlos held that, in light of the overwhelming evidence against the defendants, the error was harmless beyond a reasonable doubt. 984 F.2d at 1242-43. In this case, the evidence against Appellants is equally compelling: the actions of both Ynfante and DeLeon were observed by an informant and nine police officers; cocaine and pre-recorded bills were found on and around Ynfante; and a sound wire on Cruz recorded the entire transaction. Therefore, in light of this overwhelming evidence, we find that the erroneous jury instructions were harmless.