Charles **BUTLER**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 93–CF–107.

District of Columbia Court of Appeals.

Argued March 8, 1994.
Decided Aug. 15, 1994.

Kenneth Rosenau, Washington, DC, for appellant.

Steven D. Mellin, with whom Eric H. Holder, Jr., U.S. Atty., John R. Fisher, Thomas C. Black, and Rachel Adelman–Pierson, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before FERREN, STEADMAN and FARRELL, Associate Judges.

FERREN, Associate Judge:

A jury convicted appellant of distributing cocaine. *See* D.C.Code § 33–541(a)(1) (1993). Appellant challenges his conviction primarily on the ground that the trial court's deliberate modifications of the standard "reasonable doubt" instruction—including omission of one of the principal definitional sentences—amounted to constitutional error requiring reversal. We conclude that the court's revisions of the standard reasonable doubt instruction were improper but that the resulting instruction was not constitutionally deficient. We therefore affirm.

## I.

The government's evidence established that on June 17, 1991, Detective Mary Lanauze and Officer Stephen Allen, while working undercover, purchased a quantity of drugs from appellant and appellant's codefendant, Danny Duncan, on the corner of First and Florida Avenue, N.W. Detective Lanauze testified that, at approximately 11:50 p.m., she and Officer Allen drove to the vicinity of First and Florida Avenue carrying an unspecified amount of prerecorded funds and a portable police radio. The officers got out of their car, walked across the street, and approached appellant, who was standing in front of a liquor store. The corner was well lighted because of the many businesses and the playground nearby. Detective Lanauze asked appellant whether he had "[a]ny twenties," referring to a quantity of cocaine that costs twenty dollars. Appellant responded "Yeah," and codefendant Duncan, who was standing a few feet away, quickly approached appellant and the officers. Appellant tilted his head to the right for the officers to follow him around the corner onto Florida Avenue. Appellant then told Duncan, "Go ahead, man. Serve her up," and Duncan pulled a plastic zip-lock bag out of his pocket and handed it to Detective Lanauze. The detective took the bag, which contained a white rock-like substance, and handed the money to Duncan.

After the transaction, Detective Lanauze and Officer Allen walked across the street to a park. They sat on the park wall and radioed a lookout to the police arrest team, describing appellant, Duncan, and a third individual later identified as DeCarlos Banks, a juvenile who had taken the money from Duncan after the officers walked away. As Detective Lanauze radioed the lookout, she watched the arresting officers drive to the corner and told them over the radio to stop their car when they were directly in front of the suspects. Detective Lanauze and Officer Allen watched the police get out of their car and detain the suspects. Within two minutes, in drive-by identifications, Lanauze and Allen identified appellant, Duncan, and Banks as the men who had sold them the drugs, and the police arrested the suspects. The white rock-like substance, which was in

the bag the officers had bought from appellant and Duncan, was later found to be eighty percent strength cocaine.

Officer Allen's testimony was virtually identical to Detective Lanauze's testimony. In addition, two of the officers who arrested appellant, Duncan, and Banks testified that they had responded to the lookout, detained the suspects, and arrested them after the drive-by identifications. Finally, a narcotics detective testified as an expert on behalf of the government regarding the various roles played by each participant in a drug transaction.

The jury convicted appellant and codefendant Duncan of distributing cocaine. *See* D.C.Code § 33–541(a)(1).

## II.

Appellant contends that the trial court, over appellant's objection, impermissibly deviated from the "reasonable doubt" instruction—Instruction No. 2.09—of the Criminal Jury Instructions for the District of Columbia (3d ed. 1978) (hereafter "Redbook"), and that the resulting instruction was constitutionally deficient requiring reversal. *See United States v. Colon–Pagan*, 1 F.3d 80, 82 (1st Cir.1993) ("Where a trial court has seriously misdescribed the government's burden of proof ... 'there has been no jury verdict within the meaning of the Sixth Amendment.' ") (quoting *Sullivan v. Louisiana*, — U.S. —, —, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993)). We agree that the trial

court should not have made one of the challenged instructional deviations, but we cannot agree reversal is required. Although, in general, we do not condone modifications of the standard reasonable doubt instruction contained in the Redbook, we must conclude that the trial court's instruction in this case did not deprive appellant of his Sixth Amendment right to a trial by jury.

### A.

■ "The government must prove beyond a reasonable doubt every element of a charged offense." *Victor v. Nebraska*, — U.S. —, —, 114 S.Ct. 1239, 1242, 127 L.Ed.2d 583 (1994); *see also In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury."

*Victor*, — U.S. at —, 114 S.Ct. at 1243 (citations omitted) (quoting *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954)).[1] Because of its

---

**1.** Several federal circuit courts of appeals have held that an instructional definition of "reasonable doubt" was unnecessary, and some of these courts have discouraged attempts to do so. *See, e.g., United States v. Olmstead*, 832 F.2d 642, 646 (1st Cir.1987) ("an instruction which uses the words reasonable doubt without further definition adequately apprises the jury of the proper burden of proof"), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1739, 100 L.Ed.2d 202 (1988); *Murphy v. Holland*, 776 F.2d 470, 475 (4th Cir.1985), *vacated on other grounds*, 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 334 (1986) ("To protect the accused's due process rights and avoid supplying the grounds for unnecessary constitutional challenges, the wisest choice for trial courts to take is to avoid defining reasonable doubt in their instructions unless specifically requested to do so by the jury."); *United States v. Gibson*, 726 F.2d 869, 874 (1st Cir.) ("It can be said beyond

any doubt that the words 'reasonable doubt' do not lend themselves to accurate definition."), *cert. denied*, 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984); *United States v. Witt*, 648 F.2d 608, 610–11 (9th Cir.1981) ("Although a proper definition is always appropriate, the decision whether to define reasonable doubt should be left to the court's discretion."); *United States v. Lawson*, 507 F.2d 433, 441 (7th Cir.1974) ("failure to give a defining instruction of 'beyond a reasonable doubt,' even though an acceptable instruction has been tendered, should not be the basis for reversing an otherwise fairly conducted trial"), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975). In sum, "assuming that the jury has been instructed that the prosecution must prove its case beyond a reasonable doubt and that the burden of doing so remains with the prosecution," *Lawson*, 507 F.2d at 442, there is substantial authority for the proposition that a

constitutional basis, therefore, the reasonable doubt instruction is probably the most important instruction the jury receives in a criminal case. *See Dunn v. Perrin,* 570 F.2d 21, 25 (1st Cir.) (reasonable doubt instruction is "most important aspect of closing instruction to the jury in a criminal trial"), *cert. denied,* 437 U.S. 910, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978).

■ When the trial court deviates from an approved, constitutionally sound reasonable doubt instruction, our inquiry is whether there has been "a misdescription of the burden of proof," *Sullivan,* — U.S. at —, 113 S.Ct. at 2082, producing a "reasonable likelihood" that the jury understood the instructions to allow conviction based on a lesser standard than proof beyond a reasonable doubt. *See Victor,* — U.S. at —, 114 S.Ct. at 1243; *Estelle v. McGuire,* 502 U.S. 62, —, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991). "[A] misdescription of the burden of proof ... vitiates *all* the jury's findings[, and] a reviewing court can only engage in pure speculation—its view of what a reasonable jury would have done. And when it does that, 'the wrong entity judge[s] the defendant guilty.'" *Sullivan,* — U.S. at —, 113 S.Ct. at 2082 (quoting *Rose v. Clark,* 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986)). *See also Colon–Pagan,* 1 F.3d at 82 (reversible plain error where reasonable doubt instruction misdescribed government's burden of proof). *But see United States v. Merlos (Merlos II),* 303 U.S.App.D.C. 395, 8 F.3d 48 (1993) (*Sullivan* error not plain error, hence not reversible, in circumstances of case), *cert. denied,* — U.S. —, 114 S.Ct. 1635, 128 L.Ed.2d 358 (1994).

■ In sum, if the trial court misdescribes the burden of proof, creating a reasonable likelihood that the jury might perceive the standard as less than proof beyond a reasonable doubt, then the instruction is constitutionally deficient and, at least where objection has been made to the instruction, we

trial court's decision not to define "reasonable doubt" for the jury does not by itself make the instruction constitutionally deficient. We do not address that question here.

**2.** The fourth edition of the standard jury instructions was published after the trial in this case.

must reverse appellant's conviction. *See Sullivan,* — U.S. at ——, 113 S.Ct. at 2081–82; *United States v. Taylor,* 302 U.S.App.D.C. 349, 353, 997 F.2d 1551, 1555 (1993) ("a constitutionally deficient reasonable-doubt instruction cannot be harmless error").

■ The Redbook instruction on reasonable doubt states:

Reasonable doubt, as the name implies, is a doubt based on reason, a doubt for which you can give a reason. It is such a doubt as would cause a juror, after careful and candid and impartial consideration of all the evidence, to be so undecided that he or she cannot say that he or she *has an abiding conviction* of the defendant's guilt. *It is such a doubt as would cause a reasonable person to hesitate or pause in the graver or more important transactions in life.* However, it is not a fanciful doubt, nor a whimsical doubt, nor a doubt based on conjecture. It is a doubt which is based on reason. The government is not required to establish guilt beyond all doubt, or to a mathematical certainty or a scientific certainty. Its burden is to establish guilt beyond a reasonable doubt.

Criminal Jury Instructions for the District of Columbia, No. 2.09 (4th ed. 1993) (emphasis added) (hereafter "Redbook").[2] This court and the United States Court of Appeals for the District of Columbia Circuit, on several occasions, have approved this reasonable doubt instruction. *See Foreman v. United States,* 633 A.2d 792, 793–94 (D.C.1993) (citing Redbook Instruction No. 2.09 with approval); *Baptist v. United States,* 466 A.2d 452, 459 (D.C.1983) (same); *United States v. Merlos (Merlos I),* 299 U.S.App.D.C. 401, 403, 984 F.2d 1239, 1241 (same), *vacated on other grounds,* 303 U.S.App.D.C. 395; 8 F.3d 48 (1993); *United States v. Baber,* 145 U.S.App.D.C. 98, 101, 447 F.2d 1267, 1270 (same), *cert. denied,* 404 U.S. 957, 92 S.Ct.

This new edition leaves the reasonable doubt instruction unchanged, except for the addition of the feminine pronoun, "she," in two places in the instruction. *Compare* Redbook Instruction No. 2.09 (3d ed. 1978) *with* Redbook Instruction No. 2.09 (4th ed. 1993).

324, 30 L.Ed.2d 274 (1971). Although we have never squarely held that the Redbook instruction must be given exactly as is, we believe it is very dangerous, and therefore almost always inappropriate, for trial judges to risk any change in that language. "[E]fforts to reformulate [the Redbook] instruction should proceed with extreme caution, for '[a]n instruction central to the determination of guilt or innocence may be fatally tainted by even a minor variation which tends to create ambiguity.'" *Foreman*, 633 A.2d at 794 (quoting *United States v. Alston*, 179 U.S.App.D.C. 129, 135, 551 F.2d 315, 321 (1976)). Accordingly, we urge trial judges to adhere rigorously to the language that this court has expressly approved.

In this case, the trial court made two notable changes in the Redbook reasonable doubt instruction. It (1) substituted the phrase "is firmly convinced" for the phrase "has an abiding conviction," and (2) omitted the following sentence supplying one characterization of "reasonable doubt:" "It is such a doubt as would cause a reasonable person to hesitate or pause in the graver or more important transactions in life."[3] Despite these departures from standard Redbook Instruction No. 2.09, we conclude that the jury was not reasonably likely to have understood the trial court's instruction to allow conviction based on a lesser standard than the required proof beyond a reasonable doubt.

*See Victor,* —— U.S. at ——, 114 S.Ct. at 1243.

**B.**

■ In *Foreman,* our most recent decision concerning the reasonable doubt instruction, we explicitly approved the substitution of the words "firmly convinced" for the phrase "an abiding conviction" in Redbook Instruction No. 2.09. The trial court in *Foreman* had substituted the phrase "a deep rooted belief"—not the "firmly convinced" language the trial court used in this case—for the phrase "an abiding conviction." We noted in dicta:

> The judge's modification of the standard instruction stemmed, most probably, from his dissatisfaction with the phrase "abiding conviction," a dissatisfaction we share. The adjective "abiding" borders on the archaic, hence may carry less precise meaning to modern ears; and "conviction" has *its own potential for confusion with,* say, conviction for a crime. We therefore do not shy from encouraging trial judges to substitute for "abiding conviction" the participial phrase "firmly convinced" employed in the federal pattern instruction. . . .[4] *That modification of the Redbook instruction would be slight yet beneficial.*

*Id.* at 794–95 (emphasis added). Several courts, indicating approval of the Federal

---

**3.** The trial court gave the following reasonable doubt instruction:

> Reasonable doubt, as the name implies, is a doubt based on reason, a doubt for which you can give a reason. It is such a doubt as would cause a juror after careful and candid and impartial consideration of all the evidence, whether produced by the Government or a Defendant or both, to be so undecided that he or she cannot say that he *is firmly convinced* of the Defendant's guilt. [Omission of "hesitate or pause" sentence from Redbook Instruction No. 2.09] However, it is not a fanciful doubt or a whimsical doubt or a doubt based on guesswork, it is a doubt which is based on reason.
>
> The Government is not required to establish guilt beyond *all* doubt or to mathematical certainty or to a scientific certainty. It[']s burden is to establish guilt beyond a reasonable doubt.

**4.** FEDERAL JUDICIAL CENTER, PATTERN CRIMINAL JURY INSTRUCTIONS, No. 21 (1988 ed.) provides:

> As I have said many times, the government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.
>
> *Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.* There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are *firmly convinced* that the defendant is guilty of the crime charged, you must find him [or her] guilty. If on the other hand, you think there is a real possibility that he [or she] is not guilty, you must give him the benefit of the doubt and find him [or her] not guilty.
> (Emphasis added.)

Pattern Criminal Jury Instructions, support approval of the "firmly convinced" language as part of the reasonable doubt instruction. *See Victor,* —— U.S. at ——, 114 S.Ct. at 1253 (Ginsburg, J. concurring) ("This model instruction surpasses others I have seen in stating the reasonable doubt standard succinctly and comprehensibly."); *United States v. Williams,* 20 F.3d 125, 131 (5th Cir.1994) ("the 'firmly convinced' language, read in the context of the charge as a whole, adequately apprises the jury of the requisite level of proof"); *Taylor,* 302 U.S.App.D.C. at 354, 997 F.2d at 1556 (reasonable doubt instruction requiring that jurors be "firmly convinced" of defendant's guilt did not lower government's burden of proof); *United States v. Velasquez,* 980 F.2d 1275, 1278 (9th Cir.1992) ("use of the 'firmly convinced' language did not indicate to the jury that the prosecutor had a lesser burden than that implied by the use of the term 'reasonable doubt' "), *cert. denied,* —— U.S. ——, 113 S.Ct. 2979, 125 L.Ed.2d 677 (1993). The trial court, therefore, did not err in substituting the phrase "firmly convinced" for the phrase "an abiding conviction" in the standard reasonable doubt instruction.

### C.

■ If the trial court's only deviation from the standard instruction had been its substitution of the phrase "firmly convinced" for the phrase "an abiding conviction"—a change we approved in *Foreman*—we could affirm

appellant's conviction, relying solely on *Foreman.* The trial court, however, also omitted from the standard instruction one of the prescribed definitions of reasonable doubt: "such a doubt as would cause a reasonable person to hesitate or pause in the graver or more important transactions in life." [5] Indeed, this formulation is akin to one the Supreme Court recently characterized as "a common-sense benchmark" for understanding reasonable doubt.[6] Accordingly, we must consider "the entire instruction on reasonable doubt," *Foreman,* 633 A.2d at 795; *see also Merlos I,* 299 U.S.App.D.C. at 404, 984 F.2d at 1242 (1993), to determine whether the trial court's omission created a constitutionally deficient instruction.

■ At least one court has said that "the term reasonable doubt itself has a self-evident meaning comprehensible to the lay juror," *Murphy v. Holland,* 776 F.2d 470, 475 (4th Cir.1985), *vacated on other grounds,* 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 334 (1986), and the Supreme Court itself has noted that "[a]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." *Holland,* 348 U.S. at 140, 75 S.Ct. at 138. See also *supra* note 1. Once, however, a definition is attempted—and we have a preference in this jurisdiction for doing so—any deviation from the standard, previously approved instruction must be subjected to rigorous scrutiny. For example, in *Foreman,* we explicitly disapproved the trial

---

**5.** The trial court omitted this clause apparently because of its belief that the clause was not "a good statement of the law." The trial court noted that the commentary to FEDERAL JUDICIAL CENTER, PATTERN CRIMINAL JURY INSTRUCTIONS, No. 21 questioned its use. As we already have indicated, however, this court, and the United States Court of Appeals for the District of Columbia Circuit repeatedly have expressed approval of the entire Redbook instruction on reasonable doubt, including this clause, in cases binding on the Superior Court and, arguably, on this division. Indeed, the Federal Judicial Center commentary itself cautions that "the committee's instructions may not be acceptable in some circuits," noting that "many appellate opinions lend strong support" to the clause at issue here.

**6.** In *Victor,* petitioner's "primary argument [was] that [the trial court's instruction] equating a reasonable doubt with a 'substantial doubt' over-

stated the degree of doubt necessary for acquittal." —— U.S. at ——, 114 S.Ct. at 1250. The Supreme Court agreed that this construction was "somewhat problematic," *id.,* but did not find that particular instruction, in the context of all instructions taken as a whole, to warrant reversal. The Court noted, in particular, that

> the instruction provided an alternative definition of reasonable doubt: a doubt that would cause a reasonable person to hesitate to act. This is a formulation we have repeatedly approved, and to the extent the word substantial denotes the quantum of doubt necessary for acquittal, the hesitate to act standard gives a common-sense benchmark for just how substantial such a doubt must be. We therefore do not think it reasonably likely that the jury would have interpreted this instruction to indicate that the doubt must be anything other than a reasonable one.

*Id.* (citations omitted).

court's substitution of the phrase "deep rooted belief" for the phrase "abiding conviction," although we concluded, absent defense objection, that the substitution did not constitute plain error because this "was only part of the explanation the jury received of the concept of reasonable doubt." *Foreman*, 633 A.2d at 795. The trial court in *Foreman* had described reasonable doubt not only as a "deep rooted belief," but also as a doubt "for which you can give a reason," and as "such a doubt as would cause a reasonable person to hesitate or pause in the graver or more important transactions in life," *id.*—the very definitional clause the Supreme Court essentially endorsed in *Victor*, see *supra* note 6, and the trial court omitted in this case. We concluded in *Foreman* that the trial court's comprehensive definition of reasonable doubt was enough to overcome the court's improper substitution of "deep rooted belief" for "abiding conviction," and that the balance of the instruction, therefore, saved the instruction from plain error reversal.

### D.

■ We now turn to the instruction at issue here, where the trial court omitted the very clause we cited in *Foreman* as helping define "reasonable doubt" when the court had substituted improper language. As elaborated below, we conclude that the trial court's omission of the clause, "such doubt as would cause a reasonable person to hesitate or pause in the graver or more important transactions in life," was improper[7] but did not create a constitutionally deficient instruction under the particular circumstances of this case.

We call the trial court's omission here "improper," not to deviate from *Victor* and *Sullivan*, but to supply a convenient guideline for our analysis—as follows. Despite case law that indicates a trial court is not constitution-

ally required to define reasonable doubt for the jury, see *supra* note 1, we are not prepared to say that the jury in this jurisdiction can be left without some elaboration of what reasonable doubt means. We have approved a standard instruction; we are comfortable with it; and a trial court takes unnecessary risks with the criminal justice process by tinkering with it. We therefore wish to make clear that, given the critical significance of the reasonable doubt instruction, for purposes of analysis in the future we shall consider trial court deviations from that instruction, over defense objection, to be improper—indeed, presumptively erroneous—as we have in this case. Nor can we say that such impropriety, even if ostensibly minor, is more likely than not to withstand judicial review. In cases, for example, where counsel offers a forceful, reasoned objection as to why particular standard language is critical, or where the jury sends a note to the judge indicating confusion about "reasonable doubt," any deviation from the standard instruction contained in the fourth edition of the Redbook, see *supra* note 2—other than the approved substitution of "firmly convinced" for "abiding conviction"—may result in a misdescription of the burden of proof fatal under *Victor* and *Sullivan*. To repeat: this instructional area is not one where trial courts are likely to find this court receptive to experiment. The consequences from doing so are likely to be prejudicial to the administration of criminal justice.

We now turn to why we conclude that the trial court's improper deviation from the standard instruction was not of a magnitude requiring reversal under *Victor* and *Sullivan*.

First, in omitting a portion of the standard instruction, the trial court did not misstate the law. "[A]n omission or an incomplete

---

7. We call the trial court's omission "improper," rather than erroneous, because, under *Victor* and *Sullivan*, any irregularity that does not amount to reversible error is, presumably, not legally erroneous. These opinions address the issue as a one-step inquiry: was there a misdescription of the burden of proof producing a reasonable likelihood that the jury understood the instructions to allow conviction based on a lesser standard than proof beyond a reasonable doubt? Under

this analysis, absent such misdescription, there is no error; with such misdescription, there is *per se* reversible error, at least where the error has been preserved (*Sullivan* involved no issue of plain error). In short, because *Sullivan* concluded harmless error analysis was unavailable to prevent reversal when there is a constitutionally deficient reasonable doubt instruction, there is no room to find legal error short of constitutional error that ordinarily mandated reversal.

instruction is less likely to be prejudicial than a misstatement of the law," *Witt,* 648 F.2d at 610 (quoting *Henderson v. Kibbe,* 431 U.S. 145, 155, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977)), and that is true here. The trial court reminded the jury several times that the government had the burden of proving its case beyond a reasonable doubt—a concept that to a considerable extent has a "self-evident meaning comprehensible to the lay juror." *Murphy,* 776 F.2d at 475.

Second, because, in *Foreman,* we approved for future cases a substitution of the phrase "firmly convinced" for the Redbook phrase "an abiding conviction"—a substitution the trial court employed here—it was not necessary in this case, as it had been in *Foreman,* for the trial court to "save" the reasonable doubt definition by using the definitional clause omitted here. The instruction in this case contained no improper substitutions of phrases or other infirmities that the omitted definitional clause clarifying reasonable doubt would have helped to cure.

Finally, although the trial court omitted the reference to "hesitat[ion] or pause in the graver or more important transactions in life," the court did, in any event, define reasonable doubt, comprehensively, as a doubt that "would cause a juror, after careful and candid and impartial consideration of all the evidence, whether produced by the Government or a Defendant or both, to be so undecided that he or she cannot say that he [or she] is firmly convinced of the Defendant's guilt." See *supra* note 3. The court added that reasonable doubt is "a doubt based on reason … not a fanciful doubt or a whimsical doubt or a doubt based on guesswork." See *supra* note 3. The jury was not left without a workable definition of the term. *See generally Victor,* —— U.S. at ——, 114 S.Ct. at 1250.

We therefore must conclude that, although the trial court improperly declined to instruct the jury with the omitted clause, the instructions on reasonable doubt, as given, did not misdescribe the burden of proof, creating a reasonable likelihood that the jury might have perceived the government's burden of proof as less than proof beyond a reasonable doubt.

### III.

#### A.

■ Appellant also challenges the trial court's instruction, adopted from a civil jury instruction, that the jury should "ascertain and declare the truth according to my instructions and the principles of law that I have given you." Appellant argues that this instruction minimized the court's reasonable doubt instruction by "plac[ing] an impermissible burden on the defendant to persuade the jury of the truth of his side of the story."

We conclude in this case that the trial court's instruction to "ascertain and declare the truth" did not create a reasonable likelihood that the jury would misunderstand who had the burden of proof or the proper standard to apply. The trial court related that instruction to the other "instructions and principles of law" the court had given to the jury, and the jury was therefore not likely to view this challenged instruction in isolation. Moreover, the trial court repeated several times that the government had the burden to prove its case beyond a reasonable doubt, and there is no reason to believe that the jury, in an effort to follow the court's instruction to "ascertain and declare the truth," would have ignored the court's other, proper instructions.

With this said, we want to emphasize our view that the addition of this challenged instructional language was unwise. Any language that conceivably can be construed to allow a jury to find "truth" in its own way, without the evidentiary and instructional limitations the court has otherwise imposed, creates the potential for reversible error. While that danger was not sufficiently present to warrant reversal here, the contested language added nothing helpful to the jury and would better have been omitted.

#### B.

■ In addition, appellant challenges the following italicized language the trial court incorporated into the jury instructions:

You may not question the wisdom of any rule of law. Even if you disagree with or

don't understand the reasons for some of my rulings during the course of the trial, as jurors, you are required to follow them. Stated simply, *within our legal system there are other ways to challenge a rule of law or a ruling of law. That is not the jury's function.*

(Emphasis added.) Appellant argues that this instruction implied the jury "need not worry about the finality of its verdict because of the 'other remedies'" available to the defendant—an instruction that accordingly "misled the jury into discounting the supreme importance of its role in deciding the defendant's fate." We reject this contention. The trial court's statement that the jury must follow its instructions because "there are other ways [for appellant] to challenge a rule of law" was an accurate statement of the law and of the jury's proper function. *See Hill v. United States*, 627 A.2d 975, 980–81 (D.C.1993) (trial court's supplemental instruction that jury should consider evidence

"only to extent that you deem it helpful in determining whether the Government has proven [defendant's guilt] beyond a reasonable doubt" was not error because it was an accurate statement of jury's duty). We do not think this instruction in effect misled the jury into believing it could convict appellant without serious, perhaps irreversible, consequences.[8]

*Affirmed.*

---

8. We dispose of appellant's other contentions summarily.

Appellant contends the trial court erred in limiting his cross-examination at the pretrial suppression hearing to whether Officer Allen had observed the suspects continuously from the time of the drug transaction until the drive-by identifications. Appellant argues that the trial court also should have allowed him to ask Officer Allen how far away Allen was from the location of the drug transaction when he identified appellant. This court has ruled that a criminal defendant is entitled to a pretrial evidentiary hearing as of right on a motion to suppress a show-up identification unless it clearly appears from informal discovery that the defendant is seeking a hearing in bad faith. *In re F.G.*, 576 A.2d 724, 728 (D.C.1990) (en banc). We conclude in this case, however, that the trial court did not abuse its discretion in limiting appellant's cross-examination of Officer Allen at the suppression hearing. *See Hart v. United States*, 538 A.2d 1146, 1148–49 (D.C.1988) (reach of cross-examination delimited by scope of direct examination; other matters properly left to opposing party's case-in-chief); *Singletary v. United States*, 383 A.2d 1064, 1073 (D.C.1978) (limitation of cross-examination within discretion of trial court). The trial court could have properly concluded, as it did, that the drive-by identification was admissible simply because the officers never lost sight of appellant and the other suspects. Appellant's question to Officer Allen about his distance from the location of the drug transaction at the time of the identification was irrelevant in the context of the suppression hearing.

Appellant also contends the trial court erred in limiting his cross-examination of Officer Lanauze and his codefendant's cross examination of Officer Allen at trial. We disagree.

We reject appellant's argument regarding the admission of "other crimes" evidence used to demonstrate a defense witness's bias. *See Samuels v. United States*, 605 A.2d 596, 600 (D.C.1992) (trial court did not abuse discretion in permitting evidence of other crimes to impeach witness).

We also reject appellant's allegations of judicial misconduct. We note that the trial judge made most of the comments to which appellant objects outside the presence of the jury, and, as the government points out, the trial court's rulings considered in their totality do not demonstrate bias in favor of the government. Even assuming error, we conclude it was harmless in light of defense counsel's effective representation of appellant at trial, the strength of the government's case, and the fact that appellant failed to object at trial to many of the court's comments. *See Hollingsworth v. United States*, 531 A.2d 973, 983 (D.C.1987) (trial court's "tart and undiplomatic" comments did not have adverse effect on jury verdict because defense counsel provided high quality representation and case against appellant was strong).

Finally, we conclude that, even assuming the alleged instances of prosecutorial misconduct in fact amounted to improper conduct, appellant did not suffer "substantial prejudice" requiring reversal. *See McGrier v. United States*, 597 A.2d 36, 41 (D.C.1991) ("If we find that a particular comment was improper ... we will nevertheless affirm the conviction unless the defendant suffered 'substantial prejudice' as a result.").