**Darius SMITH, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 94–CF–569.**

District of Columbia Court of Appeals.

Argued En Banc Oct. 15, 1997.
Decided March 26, 1998.

Samia Fam, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

John R. Fisher, Assistant United States Attorney, with whom Mary Lou Leary, United States Attorney at the time the brief was filed, was on the brief, for appellee.

Roger M. Adelman, Washington, DC, appointed by the court, filed a brief as amicus curiae.*

Before WAGNER, Chief Judge, and TERRY, STEADMAN, SCHWELB, FARRELL, KING, RUIZ and REID, Associate Judges.

* The court expresses its appreciation to Mr. Adelman for his assistance.

WAGNER, Chief Judge:

Appellant, Darius Smith, was convicted after a jury trial of second degree murder while armed and related weapons offenses.[1] Over Smith's objection, the trial court instructed the jury on the meaning of reasonable doubt using portions of FEDERAL JUDICIAL CENTER, PATTERN CRIMINAL JURY INSTRUCTIONS, No. 21 (1988) (FJC instruction) instead of the standard instruction generally used in Superior Court, *i.e.,* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.09 (4th ed. 1993) ("Redbook" instruction), for which Smith expressed a preference. *See Smith v. United States,* 687 A.2d 1356, 1359–60 & n. 1 (D.C.1996). In affirming the judgment of conviction, a division of this court held that "the [trial] court's instruction, taken as a whole, correctly conveyed the government's burden of proof under the reasonable doubt standard and did not shift or lessen that burden of proof." *Id.* at 1358. We granted rehearing *en banc* to decide whether to adopt or approve a new instruction on reasonable doubt to replace Redbook instruction 2.09.[2] After consideration of the comprehensive briefs from the parties and *amicus curiae,* we conclude that the standard Redbook instruction should be modified in the manner set forth in this opinion. Our reconsideration does not alter the division's conclusion that the instruction which the trial court gave in this case did not deprive Smith of due process of law. Therefore, we affirm the judgment of conviction.

## I.

■ The standard of proof beyond a reasonable doubt "is an ancient and honored aspect of our criminal justice system," although one which "defies easy explication." *Victor v. Nebraska,* 511 U.S. 1, 5, 114 S.Ct. 1239, 1242, 127 L.Ed.2d 583 (1994). In a criminal trial, application of that standard of proof is a requirement of due process. *See id.; Cage v. Louisiana,* 498 U.S. 39, 39–40, 111 S.Ct. 328, 329, 112 L.Ed.2d 339 (1990) (citing *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970)(other citations omitted)). The Supreme Court has held that the Constitution neither requires nor prohibits trial courts from defining proof beyond a reasonable doubt. *See Victor,* 511 U.S. at 5, 114 S.Ct. at 1242. However, when a definition of the standard of proof is given to the jury, the instructions, taken as a whole, must convey the concept properly. *See Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954).

This court *en banc* has never considered the issue, but a division has held that the trial court must instruct the jury on reasonable doubt. *See Butler v. United States,* 646 A.2d 331, 337 (D.C.1994), *cert. denied,* 514 U.S. 1009, 115 S.Ct. 1326, 131 L.Ed.2d 206 (1995). Although some courts have held that no attempt should be made to define the concept of reasonable doubt to the jury, we reaffirm the requirement that reasonable doubt be explained to the juries in Superior Court.[3] The elimination of the requirement of an explanatory instruction would be a marked departure from the long-standing practice in this jurisdiction. Moreover, it would relegate the most fundamental, and perhaps decisive, principle in a criminal trial to random interpretation by counsel and jurors. Reasonable doubt is "perhaps the most important aspect of the closing instruction to

---

1. Smith was indicted for premeditated first degree murder while armed, but the jury acquitted him on that charge and convicted him of the lesser-included offense of second degree murder while armed.

2. Pursuant to an order of this court, the parties and *amicus curiae* filed supplemental memoranda addressing the following questions: (1) whether the court should adopt or approve a uniform instruction on reasonable doubt to replace current standard instruction No. 2.09 from the Redbook; and (2) if so, what that instruction should be.

3. The D.C. Circuit has held that trial judges need not define reasonable doubt, and indeed, has expressed the view that "the greatest wisdom may lie with the Fourth Circuit's and Seventh Circuit's instruction to leave to juries the task of deliberating the meaning of reasonable doubt." *United States v. Taylor,* 302 U.S.App. D.C. 349, 356, 997 F.2d 1551, 1558 (1993); *see also United States v. Adkins,* 937 F.2d 947, 950 (4th Cir. 1991); *United States v. Glass,* 846 F.2d 386, 387 (7th Cir.1988).

the jury in a criminal trial." *Dunn v. Perrin,* 570 F.2d 21, 25 (1st Cir.), *cert. denied,* 437 U.S. 910, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978); *see also Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979) (reasonable doubt has "traditionally been regarded as the decisive difference between culpability and civil liability"). Lay jurors should not be left to undertake the important task of deciding whether the government has proven "the guilt of the accused beyond a reasonable doubt without some intelligent statement of its meaning[.]" *Egan v. United States,* 52 App. D.C. 384, 393, 287 F. 958, 967 (1923).

In the strongest terms, a division of the court previously approved the definition for reasonable doubt set forth in Redbook instruction No. 2.09.[4] *See Butler, supra,* 646 A.2d at 337. The Redbook instruction on reasonable doubt has been used in this jurisdiction for decades and approved repeatedly, not only by this court but by the D.C. Circuit as well. *See, e.g., id.; Foreman, supra* note 4, 633 A.2d at 794; *Baptist v. United States,* 466 A.2d 452, 459 (D.C.1983); *Moore v. United States,* 120 U.S.App. D.C. 203, 204 & n. 4, 345 F.2d 97, 98 & n. 4 (1965).[5] The Supreme Court also has approved some of the definitional terms from the Redbook instruction. *See, e.g., Victor, supra,* 511 U.S. at 14–15, 114 S.Ct. at 1247 ("An instruction cast in terms of an abiding conviction as to guilt, without reference to moral certainty, correctly states the government's burden of proof."); *Wilson v. United States,* 232 U.S. 563, 570, 34 S.Ct. 347, 349, 58 L.Ed. 728 (1914) (reasonable doubt defined accurately as an "abiding conviction of defendant's guilt" and a doubt which would cause a juror to "pause and hesitate" before acting in important personal affairs).[6] Thus, although arguably not ideal, the Redbook instruction has withstood over time various constitutional challenges.

The Supreme Court has made clear that a constitutionally deficient reasonable doubt instruction is not subject to harmless error analysis and will require reversal. *See Sullivan v. Louisiana,* 508 U.S. 275, 279–80, 113 S.Ct. 2078, 2081–82, 124 L.Ed.2d 182 (1993) (citation omitted).[7] Therefore, a devi-

---

**4.** The standard Redbook instruction now reads:

> Reasonable doubt, as the name implies, is a doubt based on reason, a doubt for which you can give a reason. It is such a doubt as would cause [a juror], after careful and candid and impartial consideration of all the evidence, to be so undecided that you cannot say that you are firmly convinced of the defendant's guilt. It is such a doubt as would cause a reasonable person to hesitate or pause in the graver or more important transactions of life. However, it is not a fanciful doubt, nor a whimsical doubt, nor a doubt based on conjecture. It is a doubt which is based on reason. The government is not required to establish guilt beyond all doubt, or to a mathematical certainty or a scientific certainty. Its burden is to establish guilt beyond a reasonable doubt.

CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.09 (4th ed.1993). The language "firmly convinced" which appears in the current Redbook edition was substituted for "abiding conviction" which appeared in prior versions after our decision in *Foreman,* where we encouraged the use of this language taken from the FJC instruction. *Foreman v. United States,* 633 A.2d 792, 794 (D.C.1993).

**5.** In *Moore,* the D.C. Circuit Court characterized an instruction essentially identical to the Redbook instruction as "exemplary." *Moore, supra,* 120 U.S.App. D.C. at 204, 345 F.2d at 98.

**6.** *But see* note 4, *supra,* pointing out that "abiding conviction" is no longer part of the Redbook instruction.

**7.** In explaining the reason that a constitutionally deficient reasonable doubt instruction is reviewed differently than other constitutional errors which may be subject to a harmless error analysis under *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), the Supreme Court stated:

> Consistent with the jury-trial guarantee, the question [*Chapman*] instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand.... The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That will be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury trial guarantee....
>
> Since ... there has been no jury verdict within the meaning of the Sixth Amendment, the entire premise of *Chapman* review is simply absent. There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question

ation from the instruction in a way which misdescribes or lessens the government's burden of proof is severely prejudicial to the fairness of the trial and the administration of justice. *See Butler, supra,* 646 A.2d at 337. For that reason, we have warned that "[e]fforts to reformulate [the Redbook] instruction should proceed with extreme caution, for '[a]n instruction central to the determination of guilt or innocence may be fatally tainted by even a minor variation which tends to create ambiguity.'" *Foreman, supra* note 4, 633 A.2d at 794 (quoting *United States v. Alston,* 179 U.S.App. D.C. 129, 135, 551 F.2d 315, 321 (1976) (footnote omitted)). In spite of our strong admonitions to the trial court of the unnecessary risks attendant to deviations from the tried and tested Redbook instruction, some judges have modified the language, no doubt in an effort to achieve greater clarity.[8] In turn, this has resulted in a number of appeals challenging the deviations as constitutionally deficient. *See, e.g., Proctor, supra* note 8, 685 A.2d 735, 738 (trial court revised and deleted parts of the Redbook instruction); *Butler, supra,* 646 A.2d at 335–36 (same); *Foreman, supra* note 4, 633 A.2d at 794 (trial court substituted different language for phrase "abiding conviction" in Redbook instruction). In the present case, the trial court abandoned Redbook instruction 2.09 and gave instead one patterned after the FJC instruction on reasonable doubt. *See Smith, supra,* 687 A.2d at 1359–60 & n. 2.

This case by case approach creates a lack of uniformity on a fundamental principle applicable to every criminal trial. Approval of a standard reasonable doubt instruction, particularly one which eliminates much of the criticism surrounding the current Redbook

instruction, would promote uniformity and avoid the pitfalls of *ad hoc* interpretations and repetitive constitutional challenges. Adherence to an approved instruction would relieve the appellate court of "the necessities and niceties—and the concomitant uncertainties—of gauging various ... renditions [of the reasonable doubt instruction] in terms of" their risk of misdescribing the government's burden of proof. *United States v. Thomas,* 146 U.S.App. D.C. 101, 110, 449 F.2d 1177, 1186 (1971) (en banc). A standard instruction on this central principle of a criminal trial would thus conserve judicial resources. *See Winters v. United States,* 317 A.2d 530, 532 (D.C.1974) (en banc).[9] Furthermore, "[a]llowing varying definitions ... detracts from the goal of a uniform and equal system of justice." *State v. Portillo,* 182 Ariz. 592, 898 P.2d 970, 974 (1995). In a matter central to the determination of guilt or innocence, as this is, the appearance of evenhandedness, like the actuality, is important. "Use of a standard definition thus will eliminate confusion and foster fairness for defendants, the [government], and jurors alike." *Id.* At the same time, the approval of a single instruction for use in all criminal trials will not intrude unduly into the area of trial court discretion, for the standard of proof beyond a reasonable doubt is applicable to every criminal trial and is not subject to change because of the evidence or legal theories presented. For all of these reasons, we are persuaded that the approval of a uniform, modified reasonable doubt instruction is appropriate.

## II.

█ The parties in this case and *amicus* all agree that some modification of the Red-

---

whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless.... The most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt— not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough.

*Sullivan, supra,* 508 U.S. at 279–80, 113 S.Ct. at 2081–82 (citations omitted).

8. As observed in *Proctor v. United States,* 685 A.2d 735, 741 (D.C.1996), underlying these devi-

ations from the Redbook instruction, is a dissatisfaction by trial judges with what seems to them "awkward, archaic, hard-to-comprehend, or misleading [language]" in the standard instruction. (Separate statement of Associate Judge Farrell).

9. In *Winters,* recognizing the recurring problem with an anti-deadlock instruction and the concomitant drain on judicial resources to address the issue, we determined that it would "serve the administration of justice to adopt [an instructional] rule for future cases." 317 A.2d at 532.

book instruction is warranted, although they disagree on its formulation. After reviewing various alternatives, ably presented by the counsel for the parties and *amicus curiae*, we have formulated an instruction which we believe fairly and accurately conveys the meaning of reasonable doubt and responds to the most substantial criticisms of the Redbook instruction made by some Superior Court judges and by the institutional litigants representing the parties in this case. The instruction retains proven language from the Redbook instruction, but also borrows helpful language from the FJC instruction. The instruction which we adopt is as follows:

> The government has the burden of proving the defendant guilty beyond a reasonable doubt. In civil cases, it is only necessary to prove that a fact is more likely true than not, or, in some cases, that its truth is highly probable. In criminal cases such as this one, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.
>
> Reasonable doubt, as the name implies, is a doubt based upon reason—a doubt for which you have a reason based upon the evidence or lack of evidence in the case. If, after careful, honest, and impartial consideration of all the evidence, you cannot say that you are firmly convinced of the defendant's guilt then you have a reasonable doubt.
>
> Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life. However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork; it is a doubt based upon reason. The government is not required to prove guilt beyond all doubt, or to a mathematical or scientific certainty. Its burden is to prove guilt beyond a reasonable doubt.

This instruction maintains the essential concepts required for defining proof beyond a reasonable doubt, but it eliminates expressions from earlier versions of the Redbook instruction which may be viewed as outdated in favor of simpler ones. The formulation "hesitate to act in the graver or more important matters in life," has been approved by the Supreme Court. *See Holland, supra,* 348 U.S. at 140, 75 S.Ct. at 137; *see also Victor, supra,* 511 U.S. at 20–21, 114 S.Ct. at 1250–51.[10] The first paragraph is taken from the FJC instruction, with modifications to dispel any claim that jurors will not grasp that the reasonable doubt standard is the highest burden of proof required in a court of law. We have opted to include this language in spite of some suggestion that it introduces legal concepts about civil burdens of proof with which the jurors in criminal trials need not concern themselves. However, even with our one-day/one-trial system, jurors often are called to serve many times and may have had experience on a civil jury. This explanation should serve to avoid any confusion about different standards of proof with which they may be familiar, and at the same time reflect by comparison the very heavy burden of proof required in a criminal trial.

### III.

■ There is ample precedent for the court's exercise of its supervisory authority to develop a jury instruction to assure fairness and to conserve judicial resources by eliminating uncertainties which result in multiple challenges on appeal.[11] Given the great risks to the integrity of the trial which attend a deficient reasonable doubt instruction, the uncertainties and controversies generated by varying definitions, and the importance of fairness and the appearance of fairness in our justice system, the greater part of wisdom would dictate that the trial court give the standard instruction approved here, which has been determined to be faithful to

---

**10.** The current Redbook version reads, "[i]t is such a doubt as would cause a reasonable person to hesitate or pause in the graver or more important transactions of life."

**11.** *See, e.g., Kinard v. United States,* 416 A.2d 1232, 1235 & n. 3 (D.C.1980) (determining that *falsus in uno* instruction would no longer be deemed appropriate in Superior Court); *Watts v. United States,* 362 A.2d 706, 711 (D.C.1976) (en banc) (adopting a "guilty" and "not guilty" jury instruction); *Winters, supra,* 317 A.2d at 532 (adopting an anti-deadlock instruction for future cases); *see also* D.C.Code § 11–102 (1995).

the constitutional meaning of reasonable doubt. Therefore, we state, in the strongest terms, that the trial court should "resist the temptation to stray from, or embellish upon, that instruction." *Wills v. State*, 329 Md. 370, 620 A.2d 295, 304 (1993)(McAuliffe, J., concurring). As the Supreme Court of New Jersey has stated:

> We believe the trial courts will better serve the interest of justice if they do not attempt additional definitions of "reasonable doubt." ... The failure to adhere to the definition, over objection, runs the risk of reversible error.

*State v. Medina*, 147 N.J. 43, 685 A.2d 1242, 1252 (1996), *cert. denied*, — U.S. —, 117 S.Ct. 1476, 137 L.Ed.2d 688 (1997). We adopt this revised uniform instruction prospectively only. *See Watts, supra* note 11, 362 A.2d at 711.

### IV.

Finally, as stated at the outset, the division correctly held that the reasonable doubt instruction given in this case did not deprive Smith of due process, and our reconsideration *en banc* does not alter the division's opinion, which we hereby reinstate. The judgment of conviction is, therefore,

*Affirmed.*

SCHWELB, Associate Judge, concurring in the judgment:

"[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt, ... the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994) (citations omitted). There are thus many constitutionally acceptable ways in which the judge can

"correctly convey the concept of reasonable doubt to the jury." *Id.* (citation omitted).

When several permissible alternatives are available, "[a]ppellate judges ought not to substitute their ... notions of apt phraseology [in jury instructions] for the experience of trial judges in such matters; our more limited responsibility is to ensure that the law is correctly stated for jurors to apply." *United States v. Yunis*, 288 U.S.App. D.C. 129, 139, 924 F.2d 1086, 1096 (1991). Substantially for the reasons stated in my separate opinion in *Proctor v. United States*, 685 A.2d 735, 744–45 & n. 6 (D.C.1996), I continue to believe that this court ought not to prescribe which particular definition of reasonable doubt a trial judge must or should utilize in instructing the jury. Instead, like our colleagues in Maryland, we should "refuse[ ] to adopt a boilerplate explanation of the term so long as, 'when an explanation is given to the jury, it does not tend to confuse [or] mislead [the jurors] or prejudice the accused.'" *Hunt v. State*, 345 Md. 122, 691 A.2d 1255, 1269 (1997), *cert. denied*, — U.S. —, 117 S.Ct. 2536, 138 L.Ed.2d 1036 (1997) (ellipsis omitted) (quoting *Wills v. State*, 329 Md. 370, 620 A.2d 295, 301 (1993)).

If a model decree is to be adopted, I should think that it ought to have an experiential basis founded upon field-tested information regarding the kind of phraseology which is most readily understandable to lay jurors. As appellate judges, our expertise is in the law, rather than in communicating with citizens who are not trained in our craft.[1] The disciplines of law and communication are quite different from one another, and when a choice is being made between legally acceptable formulations of reasonable doubt, the most useful thing to know is which one will best enlighten the jury. The differences between the two disciplines reinforce my view that we should follow Chief Judge Mikva's counsel in *Yunis, supra.*[2]

---

1. I do note, however, that as a result of the helpful efforts of *amicus curiae*, the judges of the Superior Court had the opportunity to state their views on the question before the en banc court. Indeed, several judges did so.

2. By affirming the judgment, the court has held that the trial judge's instruction at issue in this case—the FJC "pattern instruction"—"correctly

conveyed the government's burden of proof under the reasonable doubt standard and did not shift or lessen that burden of proof." Maj. op. at 79 (citation omitted). In the next breath, however, the court has advised the trial judge and his colleagues that, in the future, they are not supposed to use the instruction that the court has just sustained against constitutional attack. Indeed, trial judges are told to eschew *any* reason-

My colleagues do not share my reservations, however, and I acknowledge that the model instruction that they have collectively composed is constitutionally unassailable. In terms of understandability for the jurors, it is doubtless an improvement upon the somewhat stilted prose of the old Redbook instruction which was deemed *de rigueur* until today. *See, e.g., Butler v. United States*, 646 A.2d 331, 333–35 (D.C.1994), *cert. denied*, 514 U.S. 1009, 115 S.Ct. 1326, 131 L.Ed.2d 206 (1995).[3] I also agree with the court that the trial judge's instruction in the present case did not deprive Smith of liberty without due process of law. Accordingly, I concur in the judgment.

RUIZ, Associate Judge, concurring:

I fully join the court's endorsement of a revised reasonable doubt instruction. As the majority opinion notes, in view of the central importance of that instruction to criminal trials and in the interest of uniformity and conservation of judicial resources, pursuant to the appellate court's supervisory power over the trial court, it is proper for the Court of Appeals to invest its time and authority in developing a revised reasonable doubt instruction for use in all criminal trials. It is correspondingly incumbent on the trial court to conform its practice accordingly. In view of our prior decisions endorsing the Redbook instruction on reasonable doubt, *see, e.g., Butler v. United States*, 646 A.2d 331, 337

(D.C.1994), the full court appropriately announces the revised rule sitting en banc. In the unanimous opinion of the Court of Appeals, the revised instruction we have formulated is not only constitutional but also well-designed to address the deficiencies that have been identified in the Redbook instruction.

I disagree with Judge Schwelb that we should refrain from acting beyond deciding the immediate case. We not only have the power to endorse an instruction pursuant to our supervisory authority, but the responsibility to do so in order to respond in a comprehensive manner to systemic issues even if they come to our attention in the context of individual cases.[1] When we so act, however, we must be mindful of the limitations inherent in our adjudicative proceedings. If we are going to develop and announce an instruction for general application, as we do here, we should act on as informed a basis as we possibly can. Accordingly, we sensibly sought advice not only from the parties, but also from appointed *amicus curiae*, who in turn sought information from the trial judges who daily instruct juries on reasonable doubt, observe their reactions, and deal with their questions. The revised rule reflects their comments and incorporates a number of their suggestions.

My sole reservation is that we have not gone far enough to seek the views of jurors

---

able doubt instruction, no matter how constitutionally sound and lucid it may be, except the *"Darius Smith"* instruction adopted today by the court.

In my opinion, the court completed its job when it announced and explained its holding with respect to the FJC instruction. The discussion beyond that is advisory and, I think, unwise. Even when we go en banc, "an issue is ripe for adjudication only [if] the parties' rights may be immediately affected by it." *Allen v. United States*, 603 A.2d 1219, 1229 n. 20 (D.C.) (en banc), *cert. denied*, 505 U.S. 1227, 112 S.Ct. 3050, 120 L.Ed.2d 916 (1992) (citation omitted). In the present case, the court's adoption of its own reasonable doubt instruction does not affect the litigants in this case one iota, and counsel for the government conceded at oral argument that such a step would be advisory in nature. Unlike Judge Ruiz, I do not believe that advisory statements in opinions are the means by which we should "respond in a comprehensive manner to systemic issues."

Now that the en banc court has spoken, however, pragmatic considerations lead me to agree with the majority's conclusion that it would be best for all concerned if the trial judges used the instruction which this court has approved. Such a course would save lawyers and judges a lot of time and energy and avoid unnecessary appeals.

**3.** I think it ironic that in *Butler*, decided quite a short time ago, we warned trial judges against any deviation from the Redbook instruction then in vogue. A judge who prematurely anticipated and used the *Darius Smith* instruction would have incurred appellate displeasure. Now, the judges are being advised to use the *Darius Smith* instruction, and a return to the pre-*Darius Smith* Redbook language has become a "no-no."

**1.** As the majority notes, the judgment of conviction is affirmed because the instruction given in this case was not violative of constitutional standards.

themselves in order to understand what terms in the current instruction are problematic, and become better informed as to what substitute language would be most helpful in conveying the core but slippery concept, "beyond a reasonable doubt." In truth, it is difficult for an appellate court, in the context of an appeal, to obtain this kind of information. It would have been possible in this case, however, just as we requested that *amicus* consult with trial judges, to request that jurors be consulted, or that data and recommendations be obtained from expert individuals or organizations with the appropriate juror testing and sampling techniques to provide us with necessary information on what jurors think and would prefer. My point is not that we should not act—we should—but that we tailor our proceedings consistent with the task at hand.