[Crim. No. 3431.   Second Dist., Div. Two.—April 23, 1941.]

THE PEOPLE, Respondent, v. R. HERVEY ANGIER, Appellant.

Gladys Towles Root for Appellant.

Earl Warren, Attorney-General, and Bayard Rhonc, Deputy Attorney-General, for Respondent.

MOORE, P. J.—Appellant was accused by information with a violation of section 288a of the Penal Code.  He was tried by the court without a jury, was convicted and sentenced to San Quentin penitentiary.  He appeals from the judgment of conviction and from an order denying his motion for a new trial.  He maintains that the verdict and decision are contrary to law and against the evidence.

Abbreviating the lengthy and conflicting stories told by two little girls aged seven and five, whom we shall refer to as AC

and YZ, it is sufficient to recite that they resided in the vicinity of appellant's home and often played around his door; that appellant had a solarium above his garage which was reached by climbing a ladder and through an opening; that about the 30th day of July, 1940, the two children accompanied by AC's sister entered the solarium to play. At the same time appellant was at work in the machine shop of one Johnson, whose premises adjoined those of appellant. The children soon became noisy at their play, whereupon appellant twice left his work, proceeded to the garage, climbed the ladder and requested them to leave. The testimony of AC is that upon appellant's third call he stayed but a minute and that he "licked" her "potty" once as she stood near the aperture through which he projected his head in order to communicate with them. YZ testified in substance that appellant "kissed" AC's "pee-wee". AC's younger sister, aged five, was definitely present on the first two calls made by appellant to the solarium but she was not called to the witness stand. There is no testimony that at any time did appellant enter into the sunroom where the children were at play. At each call he merely stood on the ladder so that his eyes were on a level with the solarium floor. The only proof of a copulation is contained in the foregoing, except that when asked as to the location of her "potty" AC pointed, whereupon the district attorney stated: "She is indicating the crotch".

Appellant predicates his appeal upon the claim that the evidence is inadequate to uphold the conviction. He inveighs lengthily against the alleged inconsistencies and discrepancies in the testimonies of the two little girls. But these vices are such as naturally would occur in the narratives of little children concerning a sudden occurrence. However, in view of our construction of the statute the judgment should not prevail.

The section of the Penal Code under which the information was drawn makes it a felony for a person to participate in the "act of copulating the mouth of one person with the sexual organ of another". That section comes under chapter V of Title IX of the code, which chapter deals with bigamy, incest and the crime against nature. "The crime against nature", as contemplated by the legislature, is the perverted act of uniting the mouth of one participant with

the sexual organ of the other with a view of gratifying the sexual desire. A mere contact of the mouth with the sexual organ of another, either by a "kissing" or a "licking", cannot be construed to mean a copulation. The word copulation has never had the meaning of mere contact. It has always had the significance of the verb "to couple", which is an English derivative. It is derived from the Latin *copulare*, which is translated "to couple, join, unite, band or tie together". (White's Latin Dictionary.) The Latin noun *copula* is translated by the lexicographers as "that which joins together, as a band, tie or leash". For over three hundred years the English derivative has had no other significance than that of uniting in sexual intercourse. Its popular significance now and for an indefinite past has been the union of the sexes in the generative act. (Standard Dictionary; Webster's International Dictionary.) The Oxford Dictionary (1893) defines the word thus: "To unite in sexual intercourse". In Stark's Elementary Natural History (1828) it is given the same usage. Goldsmith's Natural History (1874) refers to the "copulating season". In Quick Dec. Wife's Sister (1703) appears: "An hainous sin . . . in the brother to have copulated with this widow". In the King James translation (1611) of Leviticus, 15: 16–18, we find that the Mosaic laws ordained that "the woman with whom man shall lie with seed of *copulation,* they shall both bathe", etc.

Thus does it appear that since Shakespeare reinforced the static character of the English idiom the word copulate has had primarily an unvarying significance, to wit, the act of gratifying sexual desire by the union of the sexual organs of two biological entities. This is the meaning of the word wherever found in statutes and decisions. (14 C. J. S. 1315; 18 C. J. S. 130; 13 C. J. 933.) Therefore the legislature, in framing section 288a of the Penal Code, must have intended to punish only those who participate in an act whereby they are *united* or joined by the perverted act of one's holding in his mouth the sexual organ of another for the purpose of gratifying their sexual desires. A mere kiss or lick of the private organ, even though lewdly done (Pen. Code, sec. 288), is not a copulation.

Indeed, the physical facts disclosed by the record here render practically impossible the occurrence of the act charged. That defendant, without laying his hand upon the

child, standing on a ladder leading to a loft where the three girls were at play; standing only sufficiently high for his head to be level with the floor; his employer close at hand expecting his immediate return and a friend nearby awaiting his descent—that under such circumstances he could have developed a purpose to commit an act of sexual perversion does not accord with the universal concept of the psychology of humans who indulge in such practices. A person so addicted, if not surrounded by familiar pals, would have been prompted by his cunning and his fear of apprehension to seek retreat from the gaze of those whom he knew to be his superiors in the arts of virtue.

Moreover, conceding the contact of appellant's mouth with some part of the body of the little girl, the evidence herein is not sufficient to establish that he touched her sexual organ. AC's testimony is that he "licked" her "potty". No evidence identified "potty" as a sexual organ. The nearest approach to such identification was the language of counsel to which we above adverted. Such evidence does not measure up to that approach to reasonable moral certainty which the law requires in order to sentence a man for fifteen years in a state's prison. Neither is the testimony of YZ to the effect that appellant "kissed" the "pee-wee" of AC proof of an oral copulation of appellant with the sexual organ of AC. YZ's testimony is that AC was sitting on the floor near the aperture into the solarium, and that appellant's head came only to the level of the floor at the time he performed the alleged acts. Wherever she sat, obviously it would have been necessary for YZ to have seen through the thigh and clothing of AC or through the head of appellant in order to know that his lips contacted the crotch or the sexual organ of her companion.

This experience may become a bitter memory in the lives of these children, but its loathsome phases will not overcome the presumption of innocence that follows the accused or relieve the state of its burden to prove the crime alleged. That appellant might have been guilty of some reprehensible behavior not named in the accusation, which we do not affirm, is no justification for this conviction. Trials of adults upon charges of sex perversion and kindred crimes growing out of the relations of the accused to little children require the utmost vigilance upon the part of courts at every stage of

the consideration of such causes. No charge is more easily made and none is with more difficulty disproved. As recently observed by the Supreme Court: "As a matter of practical observation to many judges who have presided over trials of this nature, it is plainly recognized that, notwithstanding the salutary rule that an accused is presumed to be innocent until his guilt has been established beyond a reasonable doubt, nevertheless, to the mind of the average citizen or juror, the mere fact that a person has been accused of the commission of such an offense seems to constitute sufficient evidence to warrant a verdict of 'guilty'; and that—instead of its being necessary for the prosecution to prove his guilt beyond a reasonable doubt—in order to secure an acquittal of the charge it becomes incumbent upon the accused to completely establish his innocence, and to accomplish that result not only by a preponderance of the evidence but beyond a reasonable doubt." (*People* v. *Adams,* 14 Cal. (2d) 154, 167 [93 Pac. (2d) 146].)

While the record does not warrant the contention made that the testimony is of an irresponsible character by virtue of its discrepancies and of the mother's zeal, yet for the reasons suggested we are convinced that the judgment is an injustice which should be corrected now.

The judgment is reversed.

Wood, J., and McComb, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 22, 1941.