Marshall PROCTOR, Appellant,

v.

UNITED STATES, Appellee.

No. 93–CF–739.

District of Columbia Court of Appeals.

Argued Sept. 19, 1996.
Decided Nov. 7, 1996.

Richard Greenlee, Washington, DC, Public Defender Service, with whom James Klein and Gretchen Franklin, Public Defender Service, were on the brief, for appellant.

Anjali Chaturvedi, Washington, DC, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher and Mark J. Ehlers, Assistant United States Attorneys, were on the brief, for appellee.

Before FERREN, SCHWELB, and FARRELL, Associate Judges.

FARRELL, Associate Judge:

A jury found appellant guilty on two counts each of enticing a minor and sodomy on a minor (D.C.Code §§ 22–3501(b), –3502 (1989)), and six counts of taking indecent liberties with a minor (id., § 22–3501(a)). All of the acts were alleged to have been committed on the same victim, seven-year-old L.B., in September and December of 1992. On appeal, appellant contests the sufficiency of the evidence supporting the sodomy convictions, claims reversible error in the combined effect of two changes which the trial judge made in the reasonable doubt instruction, and assigns other errors in the conduct of the trial. Finding merit in the first two contentions, we reverse.

## I.

L.B. first met appellant on her way to school on the first day of school in September 1992, when he was giving away candy to children in front of Martin Luther King Elementary School. L.B. went over to appellant and received some bubble gum from him, and also received gum from him the next day. That same month, she was on the way to school one morning when appellant stopped her and asked her to go with him. Thinking he would give her candy again, she followed him to the rear of a building near the school. After they went down a stairwell, appellant told her to pull down her pants, which she did, and he pulled down his own pants. He then rubbed his penis against her vagina and touched her vagina with his finger. He told her to "put [her] mouth on his penis" and to place her hand on his penis; she complied with both demands. When these acts were done he gave her some bubble gum.

Appellant repeated these acts another morning in the same place, and "the same thing" also happened several times later after school. Confirming L.B.'s testimony that some of her meetings with appellant made her late for school, attendance records showed that she was late for school on September 11 and September 22, 1992.

The final acts took place in December 1992 when L.B. saw appellant after school and he told her to come with him. This time they went down some steps and entered a front door of the building behind which the earlier acts had occurred. There, the child testified, appellant "pulled down his pants and I pulled down mine. He told me to put my—put my mouth on his penis and touch it, and he put his penis—rubbed it against my vagina and he put his hands there, too." He then gave her a stick of bubble gum.

When L.B. was late returning home from school that December day, her mother went looking for her. She located the child walking towards home and asked her where she had been. L.B. told her she had been at school finishing her work. When her mother asked about the gum, the child stated that a teacher had given it to her, then that "a little

girl" had done so. The next day, when asked again, she told her mother that a man had given her the gum. She described him to her mother and her stepfather, including the fact that he "walked with a limp," [1] and told them about the assaults.

After hearing the description of the man who assaulted her, the stepfather took L.B. downstairs to appellant's apartment. Appellant denied knowing the child, and on the way back to their apartment L.B. told her stepfather that appellant was not her attacker. L.B. testified that, though she had recognized appellant that day as the man who had assaulted her repeatedly, she lied to the stepfather because she was afraid, since appellant had warned her not to tell and threatened to take her "far away" if she did.

On December 8, 1992, the child's mother saw appellant at their apartment building and noticed that he fit the description L.B. had given of her attacker. She took the girl downstairs to appellant's apartment and asked her to tell her if Proctor was the man who had assaulted her. On seeing him L.B. replied yes, and when asked if she was sure, again identified appellant as her attacker.

L.B. later made a showup identification of appellant, and again identified him in court as her assailant. When a police detective took her around the neighborhood, she pointed out the locations where appellant had assaulted her and a candy store they had gone to after some of the assaults.

## II.

Appellant was found guilty of two counts of sodomy, one in September and one in December of 1992. As the trial judge instructed the jury, "both of [those] charges relate to the allegation that the defendant placed his penis in the mouth of the complaining witness." Appellant contends the evidence was insufficient to support these convictions because it failed to establish that he placed his penis *in* the mouth of L.B., and so did not show penetration as required by the then-existing crime. We agree.

1. Police officers testified that appellant walked with "a very obvious limp."

■ The sodomy statute, at the time of appellant's conduct, stated in relevant part as follows:

(a) Every person who shall be convicted of ... placing his or her sexual organ *in the mouth* ... of any other person ... shall be fined not more than $1,000 or [if having committed such act with a person under the age of 16] be imprisoned for a period not exceeding 20 years.

(b) Any *penetration, however slight,* is sufficient to complete the crime specified in this section. Proof of emission shall not be necessary.

D.C.Code § 22–3502 (1989) (emphasis added).[2] Therefore, as the trial judge told the jury (elucidating his earlier-quoted statement), the government had to prove "that the defendant placed his penis *into* the mouth of the complaining witness" (emphasis added). Of course, the judge also explained that "any penetration, however slight," is enough to meet that requirement and that "[proof] of ejaculation is not required." But while the "slight penetration" requirement is undemanding, *see Barrera v. United States,* 599 A.2d 1119, 1125 n. 4 (D.C.1991) (on appellate review, "any evidence tending to show the slightest penetration ... is sufficient to require denial of a motion for judgment of acquittal"), it remains a differentiating feature between sodomy and crimes punished less severely such as taking indecent liberties.[3] In ordinary use, the verb "to penetrate" means "to pass into or through." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1670 (1986). Decisional law reflects this meaning by providing that, while slight penetration is enough, "a mere touching does not make out the offense." 70A AM. JUR. 2D *Sodomy* § 23 (1987). *See, e.g., Ashby v. Commonwealth,* 208 Va. 443, 158 S.E.2d 657,

658 (1968), *cert. denied,* 393 U.S. 1111, 89 S.Ct. 884, 21 L.Ed.2d 808 (1969) (where evidence showed only that victim was "told to 'put my mouth on his [penis],'" proof of sodomy was insufficient); *People v. Angier,* 44 Cal.App.2d 417, 112 P.2d 659, 660 (1941) (kissing not sufficient evidence of penetration). In this case, then, there must have been evidence that the penis "pass[ed] into or through" the lips of the victim, even slightly, or the statutory requirement of a "placing ... in the mouth" was not met.

■ In describing the September acts, however, L.B. testified only that she "put [her] mouth on his penis." She described the December incident in the same way through leading questions: she saw appellant's penis, and agreed that she "put [her] mouth there." The prosecutor asked no questions further clarifying the point, and did not ask the child to demonstrate at all the contact between her mouth and the penis. *Cf. State v. Walker,* 252 Kan. 117, 843 P.2d 203 (1992) (complainant made in-court demonstration of how penis touched her lips, saying "[j]ust right there" and pointing; since record was "devoid of any amplification [by defense] of her demonstration," court could not exclude reasonable inference by jury that penis penetrated victim's lips). Though we agree with the government, both anatomically and legally, that "[t]he lips constitute the entrance to, and are a part of, the mouth," *id.,* 843 P.2d at 217 (quoting instruction),[4] still there was no evidence from which the jury could reasonably find that the contact with appellant's penis had been made with enough pressure to cause the child's lips to part, even slightly, amounting to an entry into (a "placing in") the mouth. The government's argument thus comes down to the assertion that, given

---

2. D.C.Code § 22–3502 was repealed on May 23, 1995, by the "Anti–Sexual Abuse Act of 1994," D.C.Code §§ 22–4101 *et seq.* (1996), D.C. Law 10–257. Under the new act, "sodomy" is no longer an offense; rather, "sexual abuse" is a prohibited crime involving participation in a "sexual act" involving force, threats, drugs or lack of consent. *Id.* "Sexual act" is defined as including "[c]ontact between the mouth and the penis." D.C.Code § 22–4101(8)(B).

3. More precisely, this pertains to "forms of sodomy involving a penis." *Roundtree v. United*

*States,* 581 A.2d 315, 330 (D.C.1990). The penetration requirement is inapplicable to cunnilingus or oral sodomy on a woman's genitalia. *Id.*

4. In the related context of rape or carnal knowledge, it is well settled that "[e]ntry of the anterior of the female genital organ, known as the vulva or labia, is sufficient penetration ... it is not necessary that the vagina itself be penetrated...." Charles E. Torcia, 3 WHARTON'S CRIMINAL LAW § 278, at 17–18 (15th ed.1995).

a cylindrical object like the penis shaft, *any* oral contact between it and the mouth inferably would have caused the lips to open. That seems to us a matter of surmise and not a rational inference beyond a reasonable doubt from the fact alone that the victim placed her lips "on" the penis.[5] The evidence was insufficient to sustain appellant's convictions for sodomy.[6] *See Ashby v. Commonwealth, supra.*

### III.

■ In two material respects, the trial judge altered the standard jury instruction on reasonable doubt in this jurisdiction. Appellant argues that, under recent decisions of this court, these combined changes were reversible error. We agree.

The judge's instruction on reasonable doubt was as follows:

Reasonable doubt, as the name implies, is a doubt based on reason. It is a doubt for which you can give a reason. It is such a doubt as would cause a juror after careful and candid and impartial consideration of all of the evidence to be so undecided that he or she cannot say that they have an abiding or deep-seated *belief* of the defendant's guilt. Reasonable doubt is not a fanciful doubt, nor a doubt based on fantasy, nor a doubt based on a whimsical doubt, or a whim, nor a doubt based on conjecture or guesswork. It is a doubt which is based on reason. [Emphasis added.]

The standard jury instruction, by contrast, states as follows:

Reasonable doubt, as the name implies, is a doubt based on reason, a doubt for which you can give a reason. It is such a doubt as would cause a juror, after careful and candid and impartial consideration of all the evidence, to be so undecided that he or she cannot say that he or she has an abiding *conviction* of the defendant's guilt. *It is such a doubt as would cause a reasonable person to hesitate or pause in the graver or more important transactions in life.* However, it is not a fanciful doubt, nor a whimsical doubt, nor a doubt based on conjecture. It is a doubt which is based on reason.

CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.09 (4th ed.1993) (emphasis added) (hereafter "Redbook").[7] As is apparent, the judge deviated from the Redbook instruction in two material ways. For the phrase "abiding conviction" he substituted "an abiding or deep-seated belief." And he deleted the sentence defining reasonable doubt as "such a doubt as would cause a reasonable person to hesitate or pause in the graver or more important transactions in life." Appellant objected to the substitution but not the deletion.

In *Foreman v. United States,* 633 A.2d 792 (D.C.1993), we "disapprove[d]" of a trial judge's "use ... of the word 'belief,' even intensified by [the adjective] 'deep rooted,'" as a substitute for an "abiding conviction." We concluded that "[t]he potential ambiguity

---

**5.** In *State v. Pettijohn,* 541 S.W.2d 74 (Mo.App. 1976) cited by the government, a police officer testified that he saw the defendant asleep in a car with his "penis out of his pants and a little girl with her mouth *on* his penis." *Id.* at 75. "[V]igorous" questioning by the attorneys "could not clarify the officer's testimony as to what 'on'" meant in those circumstances. *Id.* While therefore there was "a total lack of direct evidence" of penetration, *State v. Jenkins,* 733 S.W.2d 790, 791 (Mo.App.1987) (discussing *Pettijohn* ), there nonetheless was evidence that the child had engaged in oral sodomy with the defendant while he was asleep on another occasion, and whiskey and petroleum jelly were found in the car on the present occasion. In these circumstances the *Pettijohn* court found that the evidence gave "rise to an *inference* that penetration had occurred." 541 S.W.2d at 76. No such circumstantial evidence was offered in this case.

**6.** Thus, we need not consider the proposition— which would render the proof even more insufficient here—that only proof of insertion of "the glans or virile end of the organ" into the opening is enough to satisfy the penetration requirement, so that proof even of "nibbling" on the defendant's penis by the victim would have been insufficient. *Rozar v. State,* 93 Ga.App. 207, 91 S.E.2d 131, 133 (1956).

**7.** The fourth edition of the standard jury instructions does not differ significantly from the third edition in existence at the time of trial. *See Butler v. United States,* 646 A.2d 331, 334 n. 2 (D.C.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1326, 131 L.Ed.2d 206 (1995).

in that change leaves too much room for error, especially if combined with any other shortcoming in the instruction [given]," because a "belief," however intensified, "may convey less confidence or certainty of the existence of a fact than [the word] 'conviction.'" *Id.* at 794. At issue in *Foreman,* however, was whether that substitution constituted "plain error" since the defendant had failed to object to the change. We acknowledged that, under *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), "*some* defective reasonable doubt instructions would constitute plain error, since a 'structural error' of that kind undermines the 'reliab[ility]' and hence integrity of the criminal trial." *Foreman,* 633 A.2d at 796 (emphasis and alteration in *Foreman*) (quoting *Sullivan,* 508 U.S. at 281, 113 S.Ct. at 2082). But we held that "the judge's single modification of the instruction did not work a 'structural defect[ ]' in the constitution of the trial mechanism' and so deprive appellant of '[t]he right to trial by jury....'" *Id.* at 797 (quoting *Sullivan,* 508 U.S. at 281, 113 S.Ct. at 2082) (citations omitted in *Foreman*). In the present case, as mentioned, appellant objected to the "abiding or deep-seated belief" instruction.

In *Butler v. United States, supra* note 7, decided a year later, the defendant objected to the judge's deletion, as in this case, of the sentence explaining a reasonable doubt as one that "would cause a reasonable person to hesitate or pause in the graver or more important transactions in life." 646 A.2d at 334. Relying on *Sullivan* and the Supreme Court's intervening decision in *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), we expressed the controlling principle as "whether there has been 'a misdescription of the burden of proof,' producing a 'reasonable likelihood' that the jury understood the instructions to allow conviction based on a lesser standard than proof beyond a reasonable doubt." *Butler,* 646 A.2d at 334 (citations omitted). If so, "then

the instruction is constitutionally deficient and, at least where objection has been made to the instruction, we must reverse appellant's conviction." *Id.*[8] In holding that the judge's omission of the standard sentence "was improper but did not create a constitutionally deficient instruction under the particular circumstances of this case," *id.* at 337 (footnote omitted), we relied on three factors. First, *as* an omission, the defect in the instruction was "less likely to be prejudicial than [an affirmative] misstatement of the law." *Id.* at 338 (citation omitted). Second,

> it was not necessary in this case, as it had been in *Foreman,* for the trial court to "save" the reasonable doubt definition by using the definitional clause omitted here. The instruction in this case contained no improper substitutions of phrases or other infirmities that the definitional clause clarifying reasonable doubt would have helped to cure.

*Id.* Third, relatedly, "[t]he jury was not left without a workable definition of the term [reasonable doubt]" because the instruction given preserved two other features of the standard instruction, including explication of reasonable doubt as such indecision that a juror "cannot say that he [or she] is *firmly convinced* of the Defendant's guilt." *Id.* (emphasis added; alterations in *Butler*).[9]

The government points out that *Foreman* did not *hold* that the substitution of "deep rooted belief" for "abiding conviction" was reversible error. That is true, since the context in which the instruction was challenged—unobjected-to error—made that decision unnecessary. But our discussion left little room for asserting that a judge can override objection to substituting "belief" for "conviction" and avoid reversal. We expressed agreement with *United States v. Merlos,* 299 U.S.App. D.C. 401, 984 F.2d 1239 (1993) (*Merlos I*), in which the Circuit Court found constitutional error in an instruction that replaced "abiding conviction" with

---

8. Reversal is necessary in that event, we said, because "absent such misdescription" there is no constitutional error at all, but "with such misdescription, there is *per se* reversible error." 646 A.2d at 337 n. 7 & accompanying text (analyzing *Victor* and *Sullivan*).

9. In *Foreman,* we had approved in *dicta,* as the legitimate equivalent of "abiding conviction," the phrase "firmly convinced" employed in the Federal Pattern Criminal Jury Instructions. 646 A.2d at 794–95.

"strong belief"; and we noted the subsequent history of that case in which the court, after holding the error originally to be harmless, reversed itself in light of *Sullivan v. Louisiana* in the case of a co-defendant who had objected to the change, and ordered a new trial. *Foreman*, 633 A.2d at 794 & n. 4 (citing *United States v. Loriano*, 302 U.S.App. D.C. 158, 996 F.2d 424 (1993) (per curiam)). Moreover, even reviewing for plain error in *Foreman*, we held that "the judge's *single modification* of the [reasonable doubt] instruction" did not warrant reversal. *Id.* at 797 (emphasis added). With that we conveyed our understanding that any additional weakening of the definition would require reversal at least in the less demanding context of objected-to error. *Butler* confirmed this understanding when faced with a deletion of the same "prescribed definition[ ]" that the judge omitted here. After stressing the value of the "hesitate or pause" definition as " 'a commonsense benchmark' for understanding reasonable doubt," 646 A.2d at 336 (quoting *Victor*, 511 U.S. at 20, 114 S.Ct. at 1250), we found no constitutional error only because, in critical part, that definition was not needed to "save" the overall instruction from the very "misstatement of the law" to which appellant objected in the present case.

*Foreman* and *Butler* together dictate that the combined changes to the standard definition here created "a 'reasonable likelihood' that the jury understood the instructions to allow conviction based on a lesser standard than proof beyond a reasonable doubt." *Butler*, 646 A.2d at 334. Judge Schwelb dismisses much of the language in those decisions as dictum, but the foregoing analysis demonstrates that we would drain them of their substance if we affirmed these convictions. *Butler*, in particular, applied the Supreme Court's analysis in *Victor* which Judge Schwelb says controls "*a fortiori* " here. In

reversing, we adhere to the holdings of our past decisions.

▆▆▆ The government only half suggests that appellant has not preserved the error in this case: it concedes that he objected to replacement of "conviction" with "belief" (the judge responding that he thought "a deepseated belief is synonymous with abiding conviction"). Since appellant identified the principal defect in the instruction, we consider the objection preserved. Moreover, since we review for objected-to error (hence mooting whether the error was "plain" or "obvious"),[10] it does not matter that this case was tried before *Foreman* and *Butler*. Even if those cases had announced a new constitutional rule, appellant would receive the benefit of it. *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). The remaining charges against appellant must therefore be retried.[11]

\*    \*    \*    \*    \*    \*

The remaining remarks are those only of the author of this opinion. This is the fourth time in the past few years where this court has been confronted with changes by individual trial judges to the standard Redbook definition of reasonable doubt. Other such cases may be in the pipeline. That fact raises a critical question about the supervisory role of this court. In the course of his dissent, Judge Schwelb states that "[a]ppellate judges ought not [to] substitute their prejudices regarding jury instructions or their notions of apt phraseology for the experience of trial judges in such matters." *Post* at 744 (*quoting United States v. Yunis*, 288 U.S.App. D.C. 129, 139, 924 F.2d 1086, 1096 (1991)). As a general observation, that is indisputable. It is also true, as Judge Schwelb states, that "the Constitution requires no … conformity to any prescribed recitation" of the reasonable doubt standard.

---

**10.** *See United States v. Merlos*, 303 U.S.App. D.C. 395, 398–99, 8 F.3d 48, 51–52 (1993) (*Merlos II*) (holding that the error found in *Merlos I* was not plain error as to the defendant who had not objected); *cert. denied*, —— U.S. ——, 114 S.Ct. 1635, 128 L.Ed.2d 358 (1994).

**11.** Our disposition of the case makes it unnecessary to consider appellant's remaining claims of error, with one exception. The government con-

cedes, and we agree, that the fruits of the police-initiated showup identification are not available to it on retrial, since the police entered appellant's apartment without a warrant, consent, or exigent circumstances. *See Bryant v. United States*, 599 A.2d 1107 (D.C.1991) (post-seizure identification evidence inadmissible where it was the product of a warrantless entry into defendant's rooming house).

*Post* at 744. But neither observation ends the matter. We do not deal here with an ordinary jury instruction, but with what is "perhaps the most important aspect of the closing instruction to the jury in a criminal trial." *Dunn v. Perrin,* 570 F.2d 21, 25 (1st Cir.), *cert. denied,* 437 U.S. 910, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978). Moreover, as explained, this court faces a recurrent problem of dissatisfaction by trial judges with the traditional version of that instruction which has prompted them to modify or even discard entirely the text of the instruction in their courtrooms.[12] In these circumstances, I am of the view that supervisory action by the en banc court consistent with our authority under D.C.Code § 11–102 (1995) is called for. If we do not act, and especially if the dissent's view were to prevail as to the relative insignificance of deviations from the current instruction like those made in this case, I have no doubt we will continue to be met with appeals challenging modifications by individual judges who are convinced that they can do it better.

The dissatisfaction with the Redbook instruction stems from language there which judges consider awkward, archaic, hard-to-comprehend, or misleading. Their criticism is justified. In *Foreman* we recognized the unclarity of the phrase "abiding conviction," [13] as well as its placement in a double negative sentence which the jury may have difficulty grasping. 633 A.2d at 794–95, 796 n. 8. In *Victor, supra,* Justice Ginsburg's concurrence pointed out that "distinguished federal judges" have criticized the traditional "hesitate to act" formula that corresponds to our "hesitate or pause" language. 511 U.S. at 24, 114 S.Ct. at 1252. And, in my view, a jury receives little additional help by being told that a reasonable doubt is a doubt "based on reason" or "for which you can give a reason."

This court should respond to the well-founded dislike of the Redbook instruction while ending the sort of improvisation by

trial judges that will force us to review many such variations for conformity to an uncertain constitutional standard. We should adopt and mandate the use of a new reasonable doubt instruction in the courts of this jurisdiction. We have the supervisory power to take that step. *See, e.g., Winters v. United States,* 317 A.2d 530, 532 (D.C.1974) (en banc) (adopting, "in the exercise of our superintendent responsibility," a standard anti-deadlock instruction for future cases as "serv[ing] the administration of justice"); *Kinard v. United States,* 416 A.2d 1232, 1235 & n. 3 (D.C.1980) (holding, after poll of the en banc court, that "no longer shall ... use [of the *falsus in uno* instruction] be deemed appropriate in the District of Columbia court system"). And we should use it. To paraphrase the United States Court of Appeals, this court "should no longer be burdened with the necessities and niceties—and the concomitant uncertainties—of gauging various [Redbook]-type renditions [of the reasonable doubt instruction] in terms of" their risk of misdescribing the government's burden of proof. *United States v. Thomas,* 146 U.S.App. D.C. 101, 110, 449 F.2d 1177, 1186 (1971) (en banc) (adopting standard anti-deadlock charge in exercise of its supervisory authority). Subject to being further educated on the point, I believe we should adopt the "clear, straightforward, and accurate" instruction proposed by the Federal Judicial Center. *Victor,* 511 U.S. at 26, 114 S.Ct. at 1253 (Ginsburg, J., concurring; quoting instruction). While citing this instruction, both the majority and Justice Ginsburg in *Victor* explained that the Supreme Court has "no supervisory power over the state courts"—implying that if it faced a recurrent problem of experimentation in the federal trial courts, it would consider using that power. *Id.* at 17, 27, 114 S.Ct. at 1248, 1253. The issue for this court too is *whether* to use authority we unquestionably have; and while no one would disagree that we should do so very sparingly,

---

12. A fourth case pending before a division of this court involves complete rejection of the Redbook instruction by a judge in favor of the model federal instruction on reasonable doubt, discussed *infra.*

13. "The adjective 'abiding' borders on the archaic, hence may carry little precise meaning to modern ears; and 'conviction' has its own potential for confusion with, say, conviction for a crime." *Foreman,* 633 A.2d at 794–95.

this is the extraordinary situation that calls for its use.

*Reversed.*

SCHWELB, Associate Judge, concurring in part and dissenting in part:

On several occasions in the autumn of 1992, appellant Marshall Proctor rubbed his penis against L.B.'s vagina and directed her to kiss his penis. He threatened to take the child "far away" if she told anybody what he had done. L.B. was seven years old.

L.B. was initially afraid to disclose what had happened. When she finally did tell her mother and stepfather, and also provided a detailed description of her assailant, her parents believed that Proctor might be the man. Three times, L.B. was taken to Proctor's home to determine whether she could identify him. On the first occasion, evidently out of fear, she told her mother that Proctor was not her assailant. On the second visit, however, she identified Proctor, and the police were called. A showup was arranged, and a police officer who escorted L.B. to the showup testified that when Proctor appeared, L.B. confirmed her prior identification but "froze" and attempted to pull away.

L.B.'s ordeal was still far from over. She subsequently had to discuss the molestation with police officers and prosecutors. The case then came to trial, and L.B. was forced to relive her experiences by testifying about them in open court, in the presence of her abuser. Finally, however, Proctor was convicted and sentenced. The case was apparently over, and L.B. and her family were finally in a position to attempt to put Proctor's crimes behind them and to resume their lives.

Now, years later, as a result of the majority's disposition of this case, L.B. will have to prepare to go to court all over again. All of the horror which she was forced to endure will be dredged up once more. She will again have to share with strangers experiences which no child should ever have to endure. Moreover, if L.B.'s recollection is clouded, half a decade after the events, or if she simply cannot bear to testify a second time, Proctor may well go free.

I accept the proposition—any judge must—that requiring L.B. to suffer the travail of a second trial would be a price that would have to be paid if the first trial had not been fair. Proctor, however, received a fair trial. I am satisfied that the judge's minor deviation from the Redbook's instruction on reasonable doubt—the sole basis for the majority's reversal of Proctor's convictions of enticing a minor and indecent liberties [1]— was not constitutional error or, indeed, error at all. While perhaps defensible in light of some discursive language in two of our recent opinions, see *Foreman v. United States,* 633 A.2d 792 (D.C.1993), and *Butler v. United States,* 646 A.2d 331 (D.C.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1326, 131 L.Ed.2d 206 (1995), the result reached by the majority is not compelled by those cases, and the court, it seems to me, attaches undue significance to trivial variations in phrasing when the judge's charge as a whole was eminently fair.[2]

## I.

The only portion of the trial judge's reasonable doubt instruction to which Proctor's attorney objected at all [3] was the substitution

---

1. I agree with my colleagues' conclusion that the prosecution's evidence was insufficient to prove sodomy.

2. When I first joined the bench of the Superior Court, a more experienced colleague told me semi-facetiously that "you instruct for the appellate court, not for the jury." He might well have used the present case to bolster his theory.

3. The defense "objection" was not much of an objection:

   [DEFENSE COUNSEL]: Your Honor, for the record I would object to the court's substitu-

tion of . . . abiding and deep-seated belief [for] abiding conviction. . . .
   THE COURT: Abiding conviction, deep-seated belief. You think there's a difference between the two?
   [DEFENSE COUNSEL]: *There may be.*
   THE COURT: Very well.
   (Emphasis added.) *Cf. Butler, supra,* 646 A.2d at 337 ("[i]n cases, for example, *where counsel offers a forceful, reasoned objection* as to why particular standard language is critical . . . any deviation from the [Redbook] . . . may result in a misdescription of the burden of proof . . ." and require reversal of the defendant's convictions.)

of the words "abiding or deep-seated belief" in the defendant's guilt for the words "abiding conviction," as stated in the Redbook.[4] A reading of the judge's reasonable doubt instruction as a whole persuades me that, in context, this deviation did not result in a misdescription of the burden of proof. If quizzed on the subject at the end of the trial, most jurors would probably have no idea which of the two phrases the judge used, or which one is supposed to be more favorable to the prosecution.

Both at the beginning of the reasonable doubt instruction and near the end of it, the judge told the jurors that a reasonable doubt "is a doubt based on reason." He also defined it as a doubt "for which you can give a reason." In those simple words, the judge captured the essence of what "reasonable doubt" means. No more was constitutionally required. See *Victor, supra* note 4, 511 U.S. at 5, 114 S.Ct. at 1243; *cf. Hopt v. Utah,* 120 U.S. 430, 440–41, 7 S.Ct. 614, 618–20, 30 L.Ed. 708 (1887).

My colleagues appear to believe that the phrase "abiding or deep-seated belief" is objectionable because it would countenance a finding of guilt notwithstanding some minimal level of uncertainty. In conformity with the Redbook, however, the judge also told the jurors that a doubt based on fantasy, or whim, or conjecture, or guesswork is not a reasonable doubt. He then instructed them that *"the government is not required to es-tablish guilt beyond all doubt, or to a mathematic certainty, or [to] a scientific certainty."* (Emphasis added.)

The foregoing italicized language is surely consistent with the challenged portion of the instruction. If certainty is not required, then some level of belief must be sufficient. Here, the judge formulated the standard in terms of "abiding" or "deep-seated" belief, words which convey the notion of the strongest possible kind of belief short of absolute certainty. Perhaps a professor of abstract logic or philology or other such discipline could find some shade of difference in meaning between the judge's phrasing and the various other attempts in the Redbook to say essentially the same thing. I am confident, however, that the difference in nuance which has led to the reversal of Proctor's convictions would be entirely lost on the ordinary citizens who serve on our juries and who are asked to bring their common sense to bear on the task at hand.[5]

In *Victor, supra,* the judge instructed the jury that "[y]ou may find the accused guilty upon the *strong probabilities of the case,"* and that "a reasonable doubt is an *actual and substantial doubt."* 511 U.S. at 18, 114 S.Ct. at 1255. (emphasis in original). These phrases are surely a great deal more problematic than the trial judge's instruction in this case. After assessing the judge's charge to the jury in its entirety, the Supreme Court

(Emphasis added.) I question whether the objection by Proctor's attorney in this case could fairly be characterized as "forceful" or "reasoned."

4. The judge also omitted from the Redbook instruction the sentence characterizing a reasonable doubt as "such a doubt as would cause a reasonable person to hesitate or pause in the graver or more important transactions in life." A withering critique of this "hesitate or pause" language can be found in Justice Ginsburg's separate opinion in *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583, (1994) and in the authorities there cited; *see also id.* at ——, 114 S.Ct. at 1257 (opinion of Blackmun, J., joined by Souter, J.). Proctor's attorney did not object to this omission, and there was no plain error, for the instruction without the "hesitate or pause" language was not "obviously" wrong, nor did it result in a miscarriage of justice. *See United States v. Olano,* 507 U.S. 725, 734–36, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (describing elements of plain error).

5. To the extent, if any, that *United States v. Merlos,* 299 U.S.App. D.C. 401, 403, 984 F.2d 1239, 1241, (*Merlos I* ), vacated on other grounds, 303 U.S.App. D.C. 395, 8 F.3d 48 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1635, 128 L.Ed.2d 358 (1994) (*Merlos II* ), is inconsistent with my analysis, I must respectfully suggest that we ought not to follow *Merlos.* Neither *Merlos* decision is directly in point, for in that case, the trial judge had substituted "strong belief" for abiding conviction. "Strong" belief is arguably a less exacting standard than "deep-seated" or "abiding" belief. Moreover, in *Merlos I,* the court initially found the error harmless—a conclusion which suggests a common-sense recognition on the part of the judges that the departure from the Redbook, however doctrinally imperfect, did not really affect the result.

In any event, I believe that *Merlos'* reasoning has been effectively superseded by the Supreme Court's less exacting approach in *Victor.*

discerned "no reasonable likelihood that the jurors who determined [Victor's] guilt applied the instructions in a way that violated the Constitution." 511 U.S. at 22–23, 114 S.Ct. at 1251. The Supreme Court's analysis in *Victor* applies *a fortiori* to the case at hand; there is no "reasonable likelihood" that the use of the words "abiding or deep-seated belief" led the jury to misapprehend the applicable standard.

## II.

Proctor relies primarily on our decisions in *Foreman* and *Butler*, both of which were issued after the trial in the present case. In *Foreman*, this court held that it was not "plain error" for the judge to substitute the words "deep-rooted belief" for "abiding conviction" and we affirmed the defendant's conviction. 633 A.2d at 795–97. In *Butler*, notwithstanding timely defense objections to the trial judge's departures from the Redbook, the court ruled that "firmly convinced" was an acceptable substitute for "abiding conviction," 646 A.2d at 336, and that the omission of the "hesitate or pause" sentence from the reasonable doubt instruction was not prejudicial error. *Id.* at 337–38. In each of these cases, however, and especially in *Butler*, the court went well beyond what was necessary to decide the pending appeal and opined forcefully that variations from the Redbook instruction were generally unacceptable. *Foreman*, 633 A.2d at 794; *Butler*, 646 A.2d at 333–35, 337. The extensive discussion in *Butler* of what the court apparently viewed as the all-but-sacrosanct character of the Redbook's reasonable doubt instruction foreshadowed what I regard as the unfortunate result in the present case.

The *holdings* in *Foreman* and *Butler* affirming each defendant's conviction are consistent with the affirmance of Proctor's convictions for enticing and indecent liberties. Although the opinion in *Butler*, while rejecting the defendant's own appeal, contains repeated warnings about what this court would do in future cases if a trial judge were to change a word in the Redbook instruction, these prophetic homilies were not essential to

the disposition of the case before the court. It was not necessary for the court in *Butler* to telegraph in advance the results of appeals that had not yet been filed; future cases could be decided in good time on their merits on a real record, not an imaginary or hypothetical one. "Language in an opinion which constitutes obiter dictum, entirely unnecessary for the decision of the case ... [has] no effect as indicating the law of the District." *Albertie v. Louis & Alexander Corp.*, 646 A.2d 1001, 1005 (D.C.1994) (citations and internal quotation marks omitted). Accordingly, although it cannot be gainsaid that the majority opinion in this case is consistent in spirit with various dicta in *Foreman* and *Butler*, neither of these decisions compels us to reverse Proctor's convictions on the basis of the trial judge's minor departure from the Redbook.

Chief Judge Mikva has said it well: "Appellate judges ought not [to] substitute their prejudices regarding jury instructions or their notions of apt phraseology for the experience of trial judges in such matters; our more limited responsibility is to ensure that the law is correctly stated for the jurors to apply." *United States v. Yunis*, 288 U.S.App. D.C. 129, 139, 924 F.2d 1086, 1096 (1991). Recently, the Supreme Court has reiterated its long-held doctrine that

> so long as the court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt ... *the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.* Rather, taken as a whole, the instructions must correctly convey *the concept of reasonable doubt to the jury.*

*Victor, supra,* 511 U.S. at 5, 114 S.Ct. at 1243 (emphasis added; citations and internal quotation marks omitted). In *Butler*, the court quoted the foregoing language, 646 A.2d at 333, but nevertheless insisted that in future cases, trial judges must effectively parrot the Redbook. The Supreme Court made it clear in *Victor* that the Constitution requires no such conformity to any prescribed recitation.[6] We should follow that Court's lead.

6. The majority opinion does not base its reversal

of Proctor's convictions on the court's "supervi-

## III.

For the foregoing reasons, I would vacate Proctor's conviction for sodomy. In all other respects, I would affirm the judgment of the trial court.

sory power." Accordingly, I do not address the applicability of that rather open-ended and elusive doctrine. I agree with Judge Farrell that the Federal Judicial Center's reasonable doubt instruction is superior to the one in the Redbook, but I have reservations about using the supervisory power to ordain which of several constitutionally permissible definitions a trial judge must choose.