967 A.2d 1270 (2009)
In re E.H., Appellant.
No. 05-FS-1549.
District of Columbia Court of Appeals.
Argued October 7, 2008.
Decided March 26, 2009.
Shilpa S. Satoskar, Public Defender, with whom James Klein and Jaclyn S. *1271 Frankfurt, Public Defenders, were on the brief, for appellant.
Sidney R. Bixler, Assistant Attorney General, with whom Linda Singer, Attorney General of the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, Deputy Solicitor General, were on the brief, for appellee.
Before RUIZ, GLICKMAN, and FISHER, Associate Judges.
RUIZ, Associate Judge:
Following a bench trial, appellant, E.H., was found to have committed first-degree child sexual abuse, in violation of D.C.Code § 22-3008 (2001) formerly D.C.Code § 22-4108 (1981). We conclude that there was insufficient evidence of anal penetration, a required element of the "sexual act" charged in this case, and reverse appellant's conviction.

I.
On weekends, M.B., the then-six-year-old complainant in this case, lived with his mother, J.B., and his aunt, in his aunt's apartment next door to the apartment where then-fifteen-year-old E.H. lived with his family. On Saturday, January 29, 2005, E.H. came over to M.B.'s apartment and the two played a game in the living room. While the boys were playing, J.B. went into her sister's room to talk on the phone. A few minutes later she noticed that the living room had gone quiet and found that the boys were no longer playing there. J.B. went to E.H.'s apartment and knocked on the door, but received no response. She then returned to her apartment and called E.H.'s apartment but no one answered the telephone. Soon after, E.H. called from his apartment to say that he and M.B. were there. J.B. told E.H. to send M.B. home, but immediately went back to E.H.'s apartment, where she began banging on the door. M.B. appeared and J.B. took him home.
J.B. testified that when M.B. came to the door, he looked "afraid." Back home inside their apartment, M.B. told his mother that E.H. had "started humping on him." J.B. asked whether this had ever happened before and M.B. responded that previously "[E.H.] put his penis in [M.B.'s] butt," and that "[E.H.] put [his] penis ... in [M.B.'s] mouth as well as ... made [M.B.] put [his] penis in [E.H.'s] mouth."[1] J.B. testified that after this incident she noticed that M.B. became constipated, started having trouble at school, and seemed a little withdrawn from his family members.
At trial, M.B was at times a reluctant witness. He testified that E.H. came over to play on Saturday, January 29th (confirming the date as "[t]hat morning before the police came"). He said that while he and E.H. played, his mother was sleeping in his aunt's room. He would not say where he and E.H. went after leaving his apartment. When asked to identify the parts on a boy's body that people aren't supposed to touch, he said "mouth," "[p]rivate" (penis), and "[b]utt." Though he said nobody had touched his mouth or his private on January 29, he did say that E.H. had touched his butt with "[a] hand." M.B. also said that E.H. had touched the "skin" of his butt rather than the clothes on top of his butt. M.B. further testified *1272 that E.H. had previously touched both his butt and his private with his hand. When asked whether E.H. had touched the outside or inside of his butt, M.B. categorically said, "[o]ut." When asked whether E.H. had "ever" touched the inside of his butt, M.B. said, "no."
On Monday, January 30th, M.B. and his mother met with Dr. Wanda Thompson, a psychologist with the Children's National Medical Center. Dr. Thompson testified that J.B. reported to her that "E.H. had humped [M.B.], put his penis in [M.B.'s] butt, made [M.B.] put his penis in his mouth and then had [M.B.] do the same," without specifying when this had happened. Dr. Thompson recalled that M.B. merely confirmed that what his mother said was true, but did not himself describe anything that had happened between himself and E.H.  either on January 29th, or any other day. M.B. also met with Christian Young-Anderson, a sexual assault nurse examiner with the Children's National Medical Center. Nurse Young-Anderson testified that upon conducting a physical examination of M.B., on January 31, she discovered a "laceration of his anus." She testified that "with a reasonable degree of medical and scientific certainty... [her] finding was consistent with [M.B.'s] disclosure of anal penetration." Though M.B. "told [the nurse] he didn't feel like discussing why he was [being examined,]" she had reviewed Dr. Thompson's report of the interview with M.B. and his mother prior to the physical examination.[2]

II.
First-degree child sexual abuse is the most serious offense in the District's statutory scheme of graduated sexual offenses involving children. "Whoever, being at least 4 years older than a child, engages in a sexual act with that child or causes that child to engage in a sexual act shall be imprisoned for any term of years or for life and, in addition, may be fined an amount not to exceed $250,000." D.C.Code § 22-3008 (2001).[3] A "sexual act" is defined as:
(A) The penetration, however slight, of the anus or vulva of another by a penis;
(B) Contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; or

*1273 (C) The penetration, however slight, of the anus or vulva by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.
D.C.Code § 22-3001(8) (2001) formerly D.C.Code § 22-4101 (1981).
Our standard of review for claims of evidentiary insufficiency is necessarily limited, given the deference owed to the fact-finder's assessment of credibility and reasonable inferences.
When this court considers a claim of evidentiary insufficiency, it must view the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact. We do not distinguish between direct and circumstantial evidence, and the government is not required to negate every possible inference of innocence. Rather, it is only where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt that this court can reverse a conviction.
Freeman v. United States, 912 A.2d 1213, 1218-19 (D.C.2006) (citations omitted) (internal quotation marks omitted). We have said that although the statutory requirement of "penetration, however slight," is "undemanding," there must be evidence that "`the penis pass[ed] into or through' the [anus] of the victim, even slightly." Proctor v. United States, 685 A.2d 735, 737 (D.C.1996) (applying the former sodomy statute, D.C.Code § 22-3502 (1989) (repealed 1994), which used the same language  "penetration, however slight"  as the current definition of "sexual act" in section 22-3001(8)).
From our review of the record, and viewing the evidence in the light most favorable to the government, we conclude that the evidence was insufficient to prove the act of anal penetration charged.[4] The Family Court Petition brought against appellant charged that:
On or about January 29, 2005, within the District of Columbia, said child [E.H.], being more than four years older than M.B., a child under sixteen years of age, that is 6 years of age, engaged in a sexual act with that child or caused that child to engage in a sexual act, that is, said child put his penis in or against M.B.'s anus, in violation of [D.C.Code § 22-3008.][5]
In finding that appellant committed a "sexual act" with M.B., the trial judge found that "[E.H.] danced on him, ... humped him, that on the 29th [M.B.] saw [E.H.'s] penis, that on the 29th the humping was *1274 against the child's bare skin on his butt.... And ... we have the physical evidence ... entirely consistent with abuse, ... [the] pushing [of E.H.'s] penis against the six year old's anus causing a laceration." The trial court specifically noted, "I am not finding that this abuse happened on the 29th, but I do find that it happened on or about the 29th, but that is not a decision I have to make." The trial court placed E.H. on probation for one year, after noting that he had entered into counseling immediately after the incident with M.B.
Although the evidence presented at trial supports that some type of sexual abuse occurred at some unspecified time, the fact-finder would have had to speculate that there was anal penetration "on or about" Saturday, January 29th.[6] In recounting what her son told her after she brought him home from E.H.'s apartment that day, J.B. testified that she believed, "[o]n that day, nothing really happened... he only got a chance to turn the radio on and started humping on him," most likely because of her active intervention in locating her son at E.H.'s apartment and retrieving him. In responding to the trial court's questions, J.B. made clear that M.B. was also sharing with her the things that E.H. had done to him in the past:
[COUNSEL] What else did he tell you?
[THE WITNESS] Well, at that time I was just confused. I asked him had this happened before and he said I think so. I said I need you to tell me yes or no. And he said yes....
[THE COURT:] Ma'am, when he was telling you about that was that after you had asked him about whether this had happened before?
[THE WITNESS:] Yes, Your Honor.
[THE COURT:] Or was this describing what had happened that day?
[THE WITNESS:] On the day, nothing really happened because I think I  well, I am just going to say yes, that was before  I mean, after I asked had this happened before.
[THE COURT:] In response to what happened that day, what did he say?
[THE WITNESS:] Just that he only got a chance to turn the radio on and started humping on him.
M.B. corroborated his mother's testimony that there was no "sexual act" on January 29th. Although M.B. said that E.H. touched the skin of his "butt" with a hand on that day, he specifically denied that E.H. had touched the "inside" of his butt. According to his mother, M.B. defined "humping" as "holding ... closely." M.B.'s testimony is at times confused as to whether he is describing events occurring on January 29 or at some earlier time, and although it is not unusual for a child this young to be confused or vague about dates, it is notable that the trial judge questioned the sufficiency of the evidence after the testimony of M.B. and J.B. when he said, "I don't find that a reasonable fact-finder could infer from the testimony so far that [M.B.] was anally penetrated on the 29th."
Following M.B. and J.B., only Dr. Thompson and nurse Young-Anderson testified. Their testimony provides no further evidence that any anal penetration *1275 occurred on Saturday, January 29th. Dr. Thompson testified that J.B. recounted what M.B. had told her on that day, that "E.H. had humped him, put his penis in [M.B.'s] butt, made [M.B.] put his penis in his mouth and then had [M.B.] do the same." But, as J.B. clarified at trial, M.B. had been talking about previous events. Dr. Thompson also recalled that M.B. merely confirmed that what his mother said was true, but did not himself describe anything that had happened between him and E.H.  either on January 29th or on any other day. Dr. Thompson's testimony, based on what J.B. and M.B. said to her, does not shed any additional light on whether anal penetration occurred on January 29th.
Nurse Young-Anderson's testimony offers little additional support. Though she provides an opinion as to the possible source of the anal laceration discovered when she examined M.B. ("consistent with... anal penetration"), M.B. himself did not recount any details to her of what had happened. Moreover, the government's exhibits, a photograph depicting the laceration on M.B.'s anus and a diagram on which M.B. identified the parts on a boy's body that people aren't supposed to touch, are inconclusive as to whether any penetration of the anus occurred. Although nurse Young-Anderson testified that the laceration was "of the anus" and that it was "consistent with M.B.'s report of anal penetration," she was not asked to clarify whether the laceration was inside the anus proper or in the surrounding external area. See Proctor, 685 A.2d at 737 (holding that evidence that defendant's penis was "on" complainant's lips is insufficient to satisfy the element of penetration because "a mere touching does not make out the offense").[7] As in Proctor we reject the argument that, by definition, any contact with the anus necessarily implies penetration because it is an internal organ. See id. Moreover, the nurse testified that the laceration must have occurred within three to four days of when she examined M.B. on January 31, 2005. This means that any penetration evidenced by nurse Young-Anderson's examination must have occurred between January 27th and January 31st. The evidence showed that if E.H. abused M.B. during that time-frame, it must have been on January 29, 2005.[8] Therefore, if the finding of anal penetration is to be based on the nurse's testimony concerning the laceration, the only day the charged abuse by E.H. could have taken place was Saturday, January 29th. But, as discussed, both J.B. and M.B. testified to the contrary. As there is no evidence with the specificity necessary to allow a fact-finder to conclude, beyond a reasonable doubt, that E.H. was responsible for engaging in a sexual act, specifically anal penetration, that occurred on a date "reasonably close to the one alleged," Ingram v. United States, 592 A.2d 992, 1007 (D.C.1991), we must reverse the conviction for first-degree sexual abuse.

*1276 III.
The government has not requested, in the alternative, judgment on a lesser-included offense. See Gathy v. United States, 754 A.2d 912, 919 (D.C.2000) (holding that this court may direct the entry of judgment for a lesser-included offense where a conviction for the greater offense is reversed on grounds that affect only the greater offense). Thus, we do not remand with instructions to enter a conviction for a lesser child abuse offense, see Wilson-Bey v. United States, 903 A.2d 818, 847 n. 51 (D.C.2006), nor do we address whether second-degree child sexual abuse is a lesser-included offense of child sexual abuse in the first degree  an issue we have not decided and which the parties have not briefed.[9]

* * *
Because the evidence is legally insufficient to prove beyond a reasonable doubt that E.H. committed the sexual act charged by the government, we remand the case to the trial court with directions to vacate the judgment that appellant committed first-degree child sexual abuse, and for any further proceedings as may be consistent with this opinion.
Reversed and remanded.
NOTES
[1] The trial court concluded, over defense counsel's objection, that testimony about M.B.'s out-of-court statements was admissible under the excited utterance exception to the hearsay rule. See Lyons v. United States, 622 A.2d 34, 47 (D.C. 1993). Because appellant does not raise the issue on appeal, we need not consider whether the admission of M.B.'s hearsay statements was error.
[2] The trial court concluded, over trial counsel's objection, that the testimony about the out-of-court statements made by M.B. and J.B. to Dr. Thompson and nurse Young-Anderson was admissible under the exception to the hearsay rule for statements made for purposes of a medical diagnosis. See Galindo v. United States, 630 A.2d 202, 210 (D.C. 1993). Because appellant does not raise the issue on appeal, we need not consider whether the admission of these hearsay statements was error.
[3] D.C.Code § 22-4001(6)(B) (Supp.2008) formerly D.C.Code § 24-1121 (1981), provides that first-degree child sexual abuse is a "lifetime registration offense," which requires the offender to register with the Court Services and Offender Supervision Agency for the District of Columbia for the duration of his or her life. See D.C.Code § 22-4002(b)(1) (2001) formerly D.C.Code § 24-1122 (1981). We have held that because the registration requirement applies to persons who are "convicted" of a registration offense, it applies to minors who are prosecuted as adults, but not to juveniles who are adjudicated to be delinquent. See Cannon v. Igborzurkie, 779 A.2d 887, 890 (D.C.2001) (citing legislative history of the Sex Offender Registration Act of 1999); see also Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109-248, 120 Stat. 587 (codified in scattered sections of U.S.C. titles 10, 18, 21, 28, and 42) (conditioning a state's receipt of certain federal funds on adoption of minimum registration requirements, including that a juvenile, over fourteen years of age, adjudicated delinquent of an offense "comparable to or more severe than aggravated sexual abuse," must register as a sex offender. 42 U.S.C.A. § 16911(8) (Supp.2008)).
[4] Because we conclude that there was insufficient evidence on the record to support a conviction for first-degree child sexual abuse, we need not decide whether there were any legal errors in the trial judge's verdict. Specifically, appellant points to the trial judge's reliance on certain facts that are not supported by the evidence (e.g., that M.B. saw E.H.'s penis on January 29th), see In re C.J., 514 A.2d 460, 463 (D.C. 1986), and the government's erroneous argument at trial that "[p]enetration technically is not required under the statute." There is no question, however, that the sexual act charged by the government required proof of penetration for a conviction for first-degree child sexual abuse. See D.C.Code § 22-3001(8) (2001).
[5] Appellant was charged with four counts of first-degree child sexual abuse. Two counts, which charged that "[o]n or about March of 2003 to January 2004" appellant had "put his penis in or against M.B.'s anus" and that appellant had "put his penis in M.B.'s mouth" were dismissed pursuant to a motion for judgment of acquittal. The trial judge acquitted appellant after trial of a third count which charged that "[o]n or about March of 2004 to January of 2005" appellant "put his penis in M.B.'s mouth."
[6] We have recognized that the phrase "on or about" encompasses more than the days immediately before and after the date alleged in an indictment or petition. See, e.g., Williams v. United States, 756 A.2d 380, 389 (D.C.2000) ("The actual date of the offense varied from the charged date by no more than approximately two weeks and was therefore `reasonably close.'"); Jones v. United States, 716 A.2d 160, 166-67 (D.C.1998) (upholding a conviction based on evidence that the act in question occurred, as charged in the indictment "on or about December 22, 1994 to May 10, 1995").
[7] The trial judge did not expressly find that there was penetration, possibly because of the government's mistaken argument about the required elements. Instead, the trial judge found that "we have the physical evidence the findings [sic] that were entirely consistent with the abuse ... pushing his penis against the six year old's anus causing a laceration...." (emphasis added).
[8] J.B. testified that M.B. was away at school during the week and lived in his aunt's apartment only on weekends. While there was testimony that M.B. had not always lived away from his mother during the week, it is not disputed that M.B. and E.H. spent time together on Saturday, January 29th, and there is no contention that the two had any contact the Friday before or any time that weekend after M.B. reported the abuse to his mother.
[9] At oral argument, counsel for the government agreed with appellant's counsel that second-degree sexual abuse is not a lesser-included offense of first-degree sexual abuse because, at least in two instances, to prove a "sexual act" (for first-degree) it is not necessary to show the specific intent required to prove "sexual contact" (for second-degree). Compare D.C.Code § 22-3008 (D.C.2001) with D.C.Code § 22-3009 (2001) formerly D.C.Code § 22-4109 (1981). Sexual contact is defined as "the touching with any clothed or unclothed body part or any object, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." D.C.Code § 22-3001(9) (2001). As noted, there is no similar mens rea requirement explicitly set out for two of the acts that can constitute a "sexual act," including the act of anal penetration that was charged in this case. See D.C.Code § 22-3001(8)(A), (B). In general, "[a] crime can only be a lesser-included offense of another if its required proof contains some, but not all, of the elements of the greater offense." Wynn v. United States, 538 A.2d 1139, 1145 (D.C.1988). But the gravamen of whether a crime is the lesser-included offense of another is legislative intent. See Scott v. United States, 953 A.2d 1082, 1095 (D.C.2008) (citing Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). We leave for another day whether second-degree child sexual abuse is a lesser-included offense of first-degree sexual abuse.